**Andre Reshard BATISTE, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 05–00–01219–CR to 05–00–01222–CR.

Court of Appeals of Texas, Dallas.

Feb. 20, 2002.

George R. Conkey, Dallas, for Appellant.

William T. (Bill) Hill, Jr., Matthew R. Filpi, Dallas, for State.

Before Justices LAGARDE, MORRIS, and JAMES.

## OPINION

LAGARDE, Justice.

Andre Reshard Batiste appeals his convictions for aggravated robbery. Appellant pleaded guilty to the charges before a jury. The jury found appellant guilty and assessed punishment in each case at twenty-eight years' imprisonment. The jury also assessed a $5,000 fine in cause number 05–00–01221–CR.

On appeal, appellant presents two issues. In his first issue, appellant contends the trial court erred by not instructing the jury regarding the burden of proof for extraneous offenses. In his second issue, appellant contends his trial counsel provided ineffective assistance by failing to object to the jury charge on the basis it did not contain an instruction on the burden of proof for extraneous offenses. For reasons that follow, we resolve appellant's issues against him and affirm the trial court's judgments.

### FACTUAL BACKGROUND

Appellant was convicted of a series of aggravated robberies he and Rogers Morgan committed in Dallas on April 16, 1999. Rene Ortega, a father of three, had just purchased lunch and was getting into his truck when "somebody stuck a gun in [his] back." The man with the gun, Morgan, told Ortega to surrender the truck's keys or he would kill him. Ortega turned around, and another man, appellant, grabbed him. Morgan then shot Ortega in the stomach and climbed into the truck on the driver's side. Ortega noticed appellant had a gun in his waistband, then saw him get into Ortega's truck. Morgan and appellant then drove off in the truck. Ortega managed to walk into a convenience store and ask for help. Ortega was taken to Baylor Hospital where he underwent surgery and remained hospitalized for a week. A doctor later informed Ortega that he had lost five pints of blood and almost died. The doctors at Baylor were unable to remove the bullet from Ortega's body because its removal placed him in jeopardy of paralysis. As a result of the shooting, Ortega was unable to work as well as he had before the shooting. Ortega testified he still had nightmares from being shot.

Harold Stewart, the C.E.O. of a nursing home company, was driving across the Houston Street Viaduct. Stewart was driving a red Cadillac. In his rearview mirror, he saw Ortega's truck hit the side of the bridge and a tire explode. The truck then accelerated and pulled alongside Stewart. The two men in the truck waved guns at Stewart and motioned for him to pull over. The truck cut in front of Stewart and "slammed on the brakes." Stewart quickly stopped his car, and the men jumped out of the truck. Both men pointed guns at Stewart and demanded his car and his wallet. Appellant got in Stewart's car and "pistol whipped" the back of

Stewart's neck. Morgan jerked Stewart out of the Cadillac and threw him onto the sidewalk. Morgan then said "Goodbye, bitch," and shot Stewart in the arm. Appellant and Morgan drove off in Stewart's Cadillac. Stewart was taken to Methodist Hospital where he underwent surgery and spent six days recuperating. When the police released Stewart's car from the impound lot, it was "trashed," had beer bottles and garbage in it, and smelled of marihuana.

Trace McCullough was driving northbound on Loop 12 when he was sideswiped by Stewart's Cadillac, causing damage to his car. McCullough became cautious, believing the collision was staged in an effort to get him to pull over to the side of the road. When McCullough did not pull over, the Cadillac pulled alongside his car again. McCullough and Morgan exchanged words while driving through several intersections. McCullough, looking for a safe place to stop, spotted a parking lot where cars were parked and pulled in. Morgan and appellant parked next to the passenger side of McCullough's car. McCullough stepped out of his car and met appellant at the back of the car. Appellant displayed a gun and ordered McCullough back into his car. As appellant started to get into McCullough's car on the passenger side, McCullough pretended to get into the driver's seat, but as appellant got into the car, McCullough ran. Appellant shot at McCullough, but hit a van instead. Appellant got into the driver's seat of McCullough's car, but could not start it because McCullough still had the keys. Appellant jumped back into the Cadillac and drove away.

Lisa Lowe, a make-up artist and hair dresser, was stopped at the intersection of Markville and L.B.J. Freeway. Inside her car were all of her makeup and beauty supplies. Suddenly, Stewart's Cadillac ran into the back of her car, causing her head to strike the steering wheel. Lowe stepped out of her car to exchange insurance information. Morgan, who had been driving the Cadillac, approached her "really raging out loudly and cussing." Morgan grabbed Lowe's right arm, dragged her across the street, started "flinging" her, and repeatedly struck her right shoulder. He then began beating her with a pistol wrapped in a jacket. Lowe eventually lost consciousness, and Morgan left her lying on the pavement. Before passing out, Lowe saw her car and the Cadillac drive away. Lowe next saw her car at the police impound, and it was "completely trashed from the front to the back." Her makeup and beauty supplies were gone. Lowe was left permanently injured as a result of the attack, can no longer work as a make-up artist or stylist, and was undergoing physical therapy and job retraining at the time of the trial. The loss of income and other expenses left Lowe financially "shattered." Lowe also testified her daughter had suffered as a result of the attack and required counseling.

Dallas police officer Eric Knight saw Stewart's Cadillac pull into a liquor store parking lot the evening of April 16. During an earlier briefing, Knight had been instructed to be on the lookout for the Cadillac. After Knight and his partner turned around to investigate the car, it pulled out from the store and began to drive away. Knight and his partner identified the Cadillac as the one they were looking for, stopped it, and arrested the occupants at gunpoint. Appellant was the driver, and a man named Corrick Brown was the passenger. Brown later took Knight and his partner to a house where the officers recovered a handgun.

Detective Bob Maxam took a voluntary statement from appellant after his arrest. In the statement, appellant described his

version of the events of April 16. Appellant stated he had gone along with Morgan with the intent to commit robberies, but that he had done so because he "needed some money for my baby" and that he "had no intention of hurting anybody."

Appellant testified he was sixteen years old when he fathered a child. Although appellant contributed to the child's care, the child's mother "took [the child] out of [appellant's] life." Appellant dropped out of school in the eleventh grade, began "hanging with thugs," and started using drugs and alcohol. He was placed on probation for possession of marihuana. In between odd jobs, appellant made money selling narcotics.

On the morning of the robberies, appellant was intoxicated from beer and marihuana. When he told Morgan he needed money, Morgan said he knew someone they could rob and obtain cash and marihuana. Morgan and appellant, each armed, took a bus to downtown Dallas. Morgan randomly picked Ortega as a robbery victim, and appellant watched as Morgan shot Ortega in the stomach. Appellant wanted to run away at that point, but he was afraid Morgan would shoot him too. Appellant jumped into Ortega's truck and rode off. Appellant admitted participating in the Stewart robbery and striking Stewart on the back of the neck with his pistol. After taking the Cadillac, appellant and Morgan drove to a liquor store. Morgan went in the store alone to see if there was anyone inside they could rob. While appellant contemplated escaping or calling the police, he noticed Morgan watching him from the store's doorway. The two men got back in the Cadillac and drove away. While driving on Loop 12, they noticed McCullough, and Morgan intentionally collided with McCullough's car. After McCullough stopped his car, Morgan ordered appellant to rob McCullough.

Appellant testified inexperience was the reason he did not successfully rob McCullough, stating, "I don't have no full knowledge on how to rob nobody." After McCullough ran away, appellant and Morgan drove to North Dallas where they encountered Lowe. After Morgan pummeled Lowe, he drove off in her car. Once appellant had the Cadillac to himself, he took the opportunity to drive away from Morgan. Appellant did not go to the police after escaping because "where I'm from, you just—you need either to get away from the individual and you handle it yourself. You just don't tell the police." Appellant admitted he did not think he would get caught. Appellant apologized for the crimes he committed and asked the jury to give him probation.

On cross-examination, appellant admitted he failed to successfully complete his term of community supervision for his marihuana charge. The trial judge had to order appellant to reveal the names of the persons who supplied appellant with the crack cocaine and marihuana he used to sell. Appellant also admitted he spent time "lounging" in "a drug infested house." Appellant further admitted he tried to shift much of the blame for the crimes to Morgan when he first talked to Detective Maxam and that nothing in his written statement indicated Morgan had forced him to participate in the robberies.

Appellant's stepfather William Sharp testified appellant was a good child growing up and had good grades until high school. Sharp opined that placing appellant on probation would hold him "more accountable" for the robberies because it would force appellant to pay back his victims.

### INSTRUCTION ON BURDEN OF PROOF

In appellant's first issue, he asserts the trial court erred by failing to instruct, sua

sponte, the jury on the State's burden of proof concerning extraneous offenses. Appellant points out the jury heard evidence of his extraneous offenses, specifically, possession of marihuana and narcotics trafficking.[1] Appellant also points out the charge did not define "reasonable doubt" or "beyond a reasonable doubt." Appellant contends he suffered egregious harm as a result of the error.

Article 37.07, section 3(a) of the code of criminal procedure prohibits a jury from considering evidence of uncharged crimes during the punishment phase of a non-capital trial unless the jury first determines beyond a reasonable doubt that the defendant committed the crimes. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2002); *Huizar v. State*, 12 S.W.3d 479, 484 (Tex.Crim.App.2000). In *Huizar*, the court of criminal appeals held article 37.07, section 3(a) requires that, if evidence of extraneous offenses is presented during a trial's punishment phase, the court must instruct the jury on the reasonable doubt standard of proof concerning the offenses. *Huizar*, 12 S.W.3d at 484; *see Allen v. State*, 47 S.W.3d 47, 50 (Tex. App.-Fort Worth 2001, pet. ref'd). Failure to give the instruction is jury charge error analyzed under the *Almanza*[2] standard. *See Allen*, 47 S.W.3d at 50.

■ Because appellant pleaded guilty to the charges before a jury, his trial became a "unitary" proceeding and was not bifurcated into separate guilt/innocence and punishment phases. *See Washington v. State*, 893 S.W.2d 107, 108–09 (Tex.App.-Dallas 1995, no pet.). However, article 37.07, section 3(a) of the code of criminal procedure provides for the admission of relevant evidence of extraneous offenses

"[r]egardless of the plea and whether the punishment be assessed by the judge or jury." TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2002). Thus, section 3(a) applies to instances where defendants plead guilty before a jury. Therefore, we conclude *Huizar*'s holding that section 3(a) of article 37.07 requires a reasonable doubt instruction for extraneous offense evidence admitted during a trial's punishment phase is applicable when a defendant pleads guilty to a jury and the jury assesses punishment. Accordingly, the trial court erred when it failed to instruct the jury on the State's burden of proof concerning extraneous offenses.

■ Appellant did not object to the jury charge. Therefore, under *Almanza*, we examine the entire record to determine whether the error was so egregious and created such harm that appellant did not receive a fair and impartial trial. *Allen*, 47 S.W.3d at 51. Egregious harm consists of those errors that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for punishment clearly and significantly more persuasive. *Lee v. State*, 29 S.W.3d 570, 578 (Tex.App.-Dallas 2000, no pet.). The actual degree of harm is assessed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information in the record. *Brown v. State*, 45 S.W.3d 228, 230 (Tex.App.-Fort Worth 2001, pet. ref'd). Egregious harm is difficult to prove and is determined on a case-by-case basis. *Id.*

---

1. Appellant does not complain of the admission of evidence of any extraneous offenses committed during his robbery spree.

2. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g).

Appellant contends the extraneous offense evidence "virtually erased" the possibility the jury would grant him probation. Appellant asserts the evidence showed he was merely a party to the offenses and carried an unloaded weapon during the robberies. Appellant also asserts the evidence of his conviction for possession of marihuana was not supported by any documentary evidence. Appellant points out the jury charge did not define "reasonable doubt" or "beyond a reasonable doubt." Finally, appellant contends the State, which emphasized the extraneous offenses in its cross-examination and closing argument, would be "encouraged" to not request reasonable doubt instructions in jury charges because omission of the instruction would result in greater punishment.

■ Because appellant admitted his guilt, the only issues for the jury to decide were the length of his sentences and whether to recommend probation. Appellant accepted responsibility for his crimes and expressed remorse for his actions. However, the trial court is not required by *Huizar* to define "reasonable doubt" or "beyond a reasonable doubt" at punishment. *See Fields v. State*, 1 S.W.3d 687, 688 (Tex.Crim.App.1999) (neither case law nor statutory authority requires reasonable doubt definition be given at punishment phase, absent a request); *see also Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim.App.2000) (definition of reasonable doubt is "redundant, confusing, and logically flawed"). *Huizar* merely requires the jury charge to instruct the jury to find extraneous offenses proven beyond a reasonable doubt before considering the offenses when assessing punishment. *See Huizar*, 12 S.W.3d at 484. Moreover, appellant admits the facts of the charged offenses were "quite serious" in comparison to the extraneous offense evidence. Appellant provided the extraneous offense

evidence himself, testifying during his direct examination to his marihuana possession conviction and his drug dealing.

Additionally, although appellant claimed to have accepted responsibility for his crimes, portions of his testimony were contradicted by evidence presented by the State. In his written statement, appellant claimed the motive for the robberies was to obtain money for his child. In his testimony, however, appellant claimed the child's mother had taken the child from him years ago. Appellant also testified his gun was unloaded, but McCullough testified appellant shot at him as he ran away. Appellant failed to provide credible explanations for why he did not turn himself in to the police or why Stewart's car was found with beer bottles inside of it and smelled of marihuana. From this evidence, the jury could have concluded appellant was a poor candidate for probation.

■ After reviewing the records, we cannot conclude the trial court's failure to give a reasonable doubt instruction deprived appellant of a fair and impartial trial. It is possible the jury assessed appellant's punishment on the facts surrounding his offenses. *See, e.g., Allen*, 47 S.W.3d at 52 (facts surrounding offense supported length of sentence assessed by jury). Moreover, the jury assessed punishments far below the maximum punishment available, despite the State's suggestion that it "start at the top." *See, e.g., Brown*, 45 S.W.3d at 232–32 (jury assessed punishment well below what State requested, indicating it did not base punishment on extraneous offense evidence). Finally, failing to find egregious harm in this case will not "encourage" the State to not request the reasonable doubt instruction. *Huizar* requires the trial court to include the instruction even if neither party requests the instruction. *See Huizar*, 12 S.W.3d at 483. Therefore, it is immaterial

whether the State requests the instruction. We conclude appellant has not shown he suffered egregious harm and, accordingly, resolve his first issue against him.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In appellant's second issue, he asserts he received ineffective assistance of counsel. Appellant contends his trial counsel was ineffective for failing to object to the jury charge on the basis it did not contain an instruction regarding the State's burden of proof for extraneous offenses.

■ We use the *Strickland* standard in evaluating ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Hernandez v. State*, 988 S.W.2d 770, 772 (Tex.Crim.App.1999). To prevail, appellant must show counsel's representation fell below an objective standard of reasonableness as well as a reasonable probability that a different outcome would have resulted but for counsel's error. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *See Cardenas v. State*, 30 S.W.3d 384, 391 (Tex.Crim.App.2000). We strongly presume counsel's competence. *See Tapia v. State*, 933 S.W.2d 631, 634 (Tex.App.-Dallas 1996, pet. ref'd). When a record does not affirmatively reflect ineffective assistance, we cannot say counsel's performance was defective. *See id.*

■ Assuming, without deciding, that counsel's representation fell below an objective standard of reasonableness, we conclude appellant has not shown how the results of his proceedings would have been different had the jury been instructed on the burden of proof for extraneous offenses. In his brief, appellant contends that, because of the absence of the reasonable doubt instruction, we may "presume that the jury did not necessarily find beyond a reasonable doubt that the extraneous acts were committed by appellant before using this evidence against him."[3] Appellant asserts counsel did not do enough to place him in a favorable light and that "the jury assumed from the extraneous acts that appellant was a drug user and seller without the jury so much as even questioning the possibility that appellant may not have committed those acts." However, appellant ignores the fact that the evidence of his drug usage and peddling and possession of marihuana conviction came directly from his own testimony. The State did not dispute those portions of his testimony. Appellant does not point to any evidence on the record showing the jury considered the extraneous offense evidence in determining appellant's sentences. *See Aldrich v. State*, 53 S.W.3d 460, 469 (Tex.App.-Dallas 2001, pet. granted) (ineffective assistance of counsel claims must be demonstrated from the record). Moreover, we have already concluded the absence of a reasonable doubt instruction did not deprive appellant of a fair and impartial trial. Appellant has not shown how the results of his proceedings would have been different had counsel objected to the jury charge. Therefore, he fails to show he received ineffective assistance of counsel. Accordingly, we resolve appellant's second issue against him.

We affirm the trial court's judgments.

---

**3.** *Appellant offers no authority to support this*   assertion.