**Randy GRIDER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–03–00224–CR.

Court of Appeals of Texas, Texarkana.

Submitted May 7, 2004.

Decided June 8, 2004.

Dean M. Swanda, Swanda and Swanda, PC, Arlington, for Appellant.

John H. Stone, Dist. Atty., and William (Bill) Hill Jr., Asst. Dist. Atty., Dallas, for State.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

After a Dallas County jury rejected Randy Grider's claim of self-defense and found him guilty of the first-degree felony offense of murdering Johnny Ray Cole, Grider testified during the punishment phase of trial that he was defending himself from Cole, and that, when Cole quit fighting, Grider also quit fighting and left the scene. The jury assessed Grider's punishment at twenty-five years' imprisonment. Grider contends on appeal we should reverse for two reasons: (1) notwithstanding Grider's failure to object to the jury charge which contained no instruction concerning sudden passion, the trial court's failure to so charge the jury caused Grider egregious harm; and (2) the evidence is legally and factually insufficient—and, in addition, the factual sufficiency standard of review is incorrect. We affirm.

*Jury Charge*

In his first point of error, Grider argues that he suffered egregious harm from the trial court's failure to instruct the jury on sudden passion. We disagree.

When on appeal the jury charge is asserted to contain error, we must first determine whether such error exists. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim.App.1996); *Garcia v. State*, No. 05–03–00001–CR, 2004 WL 1068153, at *9, 2004 Tex.App. LEXIS 4341, at *26 (Tex. App.-Dallas May 13, 2004, pet. filed). If there is error, we are to perform one of two error analyses, depending on whether the error was preserved. *Hutch*, 922 S.W.2d at 170; *see also Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986). If error was preserved, we are to reverse if "the error is not harmless." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g). If, however, error is not preserved, we are to reverse only if the error causes "egregious harm." *Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 171; *Garcia*, 2004 WL 1068153, at *9, 2004 Tex.App. LEXIS 4341, at *26.

At trial, Grider did not request an instruction on sudden passion and, in fact, said "no objection" to the charge as submitted. Error[1] was not preserved and,

---

1. One charged with murder under Texas Pe- nal Code Section 19.02 may reduce murder

therefore, must have caused egregious harm to be reversible.

 Egregious harm results from errors that deny the defendant a "fair and impartial trial," "go to the very basis of the case," "deprive the defendant of a 'valuable right,'" or "vitally affect his defensive theory." *Almanza*, 686 S.W.2d at 172. To determine whether there was egregious harm, we consider (1) the entire jury charge, (2) the evidence on contested issues and the weight of probative evidence, (3) counsel's argument, and (4) any other relevant information in the record. *Bailey v. State*, 867 S.W.2d 42, 43 (Tex.Crim.App. 1993); *Batiste v. State*, 73 S.W.3d 402, 407 (Tex.App.-Dallas 2002, no pet.). "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch*, 922 S.W.2d at 170; *see Batiste*, 73 S.W.3d at 407.

In this case, the jury charge for the guilt/innocence phase of trial included the defensive issue of self-defense, which was the sole defensive issue and the primary focus of the defense at trial. Beyond the burden of proof arguments, only self-defense was mentioned by the defense at trial—in voir dire, opening argument, and closing argument. In fact, in closing argument, Grider's counsel said, "This whole case is about self-defense." During the punishment phase of trial, Grider's testimony touched only on self-defense, not on sudden passion.

The bulk of the defense evidence attempted to establish self-defense. Grider's evidence indicated that (1) Cole, the victim, had been pursuing Grider to repay money he had borrowed from Cole, (2) Grider knew Cole normally carried a gun, (3) Cole initiated the fight resulting in Cole's death by calling Grider over to Cole's car and then lashing out at Grider and cutting his arm with a knife, (4) the two men then fought at close quarters in the front seat of Cole's car, (5) Grider was defending himself during the fight, (6) when Cole quit fighting, Grider exited the car and left the scene, and (7) Cole's loaded gun was found in Cole's car with him after the incident.[2]

On the other hand, there is at least some evidence that tends to support the claim of sudden passion. Grider's written statement to police, which is in evidence, indicated that, during the fight, Grider went

from a first-degree felony to a second-degree felony by proving by a preponderance of the evidence that he or she "caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PEN.CODE ANN. § 19.02(d) (Vernon 2003).

(1) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.
(2) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.
TEX. PEN.CODE ANN. § 19.02(a)(1), (2) (Vernon 2003). If a defendant presents evidence of sudden passion, he or she is entitled to an

instruction on this mitigating circumstance even if the evidence raising such an issue is contradicted, weak, or unbelievable. *Trevino v. State*, 100 S.W.3d 232, 238 (Tex.Crim.App. 2003). The question is whether there was any evidence from which a rational jury could infer such passion. *Moore v. State*, 969 S.W.2d 4, 11 (Tex.Crim.App.1998). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a sudden passion instruction at punishment. *Jones v. State*, 984 S.W.2d 254, 257 (Tex.Crim.App.1998). It is arguable that the evidence raised the issue of sudden passion, but because we determine there was no egregious harm, we need not decide whether sudden passion was raised.

2. It should be noted that items (5) and (6) in the above list of defense evidence came from Grider's testimony during the punishment phase of trial.

berserk. And there were over seventy cut or stab wounds on Cole's body. At one point during trial, the State's attorney spoke of a "rage" killing.[3]

From a more general review of the record, we find evidence suggesting various facts providing context for the killing. Before the killing, Cole and Grider had an ongoing bad relationship and "bad blood" between them, Grider had said to third parties that he would "get" or "kill" Cole, and Grider had obtained a gun. At the time of the killing, both Cole and Grider were intoxicated. Shortly after the killing, Grider said Cole "deserved to die," and Grider absconded to California.

*Jenkins v. State,* 740 S.W.2d 435 (Tex. Crim.App.1983), is similar to the case before us in that they both involve asserted self-defense and a failure to preserve error in failure to instruct on sudden passion. The *Jenkins* court determined, among other things, that based on the record and the defense strategy of focusing on self-defense, there was no egregious harm from the failure to instruct on sudden passion. *Id.* On facts analogous to those in the present case, the court found that sudden passion was not raised by the evidence and seemed swayed by the defendant's focus on self-defense.

In *Batiste,* the court found no egregious harm in the trial court's failure to give a reasonable doubt instruction for the jury's assessment of punishment after a guilty plea. In its analysis, the court noted that reasonable doubt was not critical or central to the case, that the jury assessed punishment "far below the maximum punishment available," and that failure to find egregious harm would not invite the State to fail to request reasonable doubt instructions in the future. *Batiste,* 73 S.W.3d at 408. From the record before us, we conclude that the issue of sudden passion was not critical or central to the case, that the jury assessed punishment "far below the maximum punishment available," and that a failure to find egregious harm here will not endanger future defendants—because it is within a defendant's power to ask for an instruction on sudden passion during the punishment phase of trial, if the issue is raised by the evidence. Those factors, too, suggest there was no egregious harm here.

*Ruiz v. State,* 753 S.W.2d 681, 686 (Tex. Crim.App.1988), focused on the charge and found egregious harm. Ruiz, charged with murder, was able to present some evidence of sudden passion arising from an adequate cause. Although the State had the burden to prove Ruiz's actions were not the result of sudden passion arising from an adequate cause, the jury was not so instructed. In *Ruiz*—before the 1994 amendments when negating sudden passion was still an element of the State's case for proving murder—the court found egregious harm in the possibility that the jury was confused and misled into ending its deliberations under the incorrect instruction on the law, because the jury demonstrated, in its communication with the trial court, initially it seriously considered sudden passion. In *Ruiz,* sudden passion went to the heart of the case and to the heart of the jury deliberations. *Id.* at 684; *see also Castillo–Fuentes v. State,* 707 S.W.2d 559 (Tex.Crim.App.1986). We note that, after the 1994 amendments to the Texas Penal Code, negating sudden passion is not an element of the State's case for murder. Instead, sudden passion, if raised and proven by a defendant, will lower the first-degree felony of murder to a second-degree felony. *See Robinson v.*

---

**3.** While there is evidence of fear and high emotions, we do not decide whether there is evidence of sudden passion arising from an adequate cause.

*State*, 945 S.W.2d 336, 342 (Tex.App.-Austin 1997, pet. ref'd).[4] In the case before us, sudden passion was not part of the State's case for murder and did not go to the heart of the case or to the heart of jury deliberations.

On the same day the *Almanza* opinion was delivered, the Texas Court of Criminal Appeals handed down *Kucha v. State*, 686 S.W.2d 154 (Tex.Crim.App.1985). *Kucha* examined the "state of the evidence" part of the *Almanza* analysis. In *Kucha*, the State sought to prove Kucha was a habitual offender. The jury charge properly instructed the jury on the enhanced range of punishment if it made a habitual-offender finding, but the charge failed to cover the alternative. *Id.* at 155. The court found no egregious error.

> The fact of the prior convictions was not a contested issue at all. Appellant's plea of "not true" only put the State to its proof. Considering that the evidence of the prior convictions was undisputed, uncontradicted, and seemed to have been taken almost as a "given" by the parties, we hold that the failure of the court to charge on the range of punishment if the enhancements were found to be untrue, was not so harmful that it deprived appellant of a fair and impartial trial. If the evidence of the prior conviction had not been so strong, or if appellant had contested it in some fashion, this issue would not be so clearcut. But, from the record it appears that all parties, including appellant, assumed the fact of the prior conviction and did not

dispute its truth. Also, the prior was proven beyond a reasonable doubt by the State. In light of the record we hold that the error was not fundamental.

*Id.* at 156. As in *Kucha*, the trial court's failure to instruct the jury on Grider's current claim of sudden passion did not relate to a "contested issue." *See also Williams v. State*, 851 S.W.2d 282, 289 (Tex.Crim.App.1993) (no egregious harm where error related to incidental theory of defense).

This case has none of the elements found by the courts to support an egregious-harm finding. In this case, there was a defensive issue submitted and focused on by the defense—self-defense. From Grider's perspective at trial, self-defense was central to the case. The issue of sudden passion appears now, on appeal, as an afterthought, and was at most incidental to the main focus at trial. Therefore the lack of an instruction on sudden passion did not deny him a "fair and impartial trial," "go to the very basis of the case," "deprive the defendant of a 'valuable right,'" or "vitally affect his defensive theory." *Almanza*, 686 S.W.2d at 172.

We hold that the lack of an instruction on sudden passion—even if it should have been given—did not cause egregious harm to Grider, and thus overrule his first point of error.

*Evidentiary Sufficiency*

■ In his remaining points of error, Grider asserts the evidence is factually and legally insufficient. He also argues that

---

4. Relevant to sudden passion, the 1994 amendments changed Sections 19.02 and 19.04 of the Texas Penal Code. Before 1994, sudden passion would make a killing voluntary manslaughter under Section 19.04. *See* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 913, *renumbered* by Act of May 28, 1973, 63rd Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1124.

After the effective date of the amendments, Section 19.02(d) provides that sudden passion can be raised by a convicted defendant during the punishment phase of trial and, if proven by a preponderance of the evidence, reduces the offense of murder to a second-degree felony. Tex. Pen.Code Ann. § 19.02 (Vernon 2003).

the standard by which we review the factual sufficiency of the evidence is incorrect, because it incorporates "the traditional civil factual sufficiency standard." We discuss those points together.

In criminal cases, we are bound to follow the standards for evidentiary sufficiency set by the Texas Court of Criminal Appeals. Very recently, a reformulated standard for our review of the factual sufficiency of the evidence was announced by the Texas Court of Criminal Appeals, remarkably, using the same logic asserted by counsel for Grider.

The Texas Supreme Court recently dealt with the issue of a factual-sufficiency review when the burden of proof at trial was higher than preponderance of the evidence. In *In re C.H.*, the court adopted a factual-sufficiency standard of review for cases in which the burden of proof is clear and convincing evidence. The court stated:

We conclude that the burden of proof at trial necessarily affects appellate review of the evidence. Under traditional factual sufficiency standards, a court determines if a finding is so against the great weight and preponderance of the evidence that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. But that standard is inadequate when evidence is more than a preponderance (more likely than not) but is not clear and convincing. As a matter of logic, a finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.

*In re C.H.*, 89 S.W.3d 17, 25, 45 Tex. Sup.Ct. J. 1000 (Tex.2002) (citations omitted). We agree with the Supreme Court that the burden of proof at trial dictates the standard of appellate review.

We will attempt to resolve some of the confusion created by the standard that has developed since *Clewis* by: 1) linking the burden of proof at trial to the standard of review and 2) avoiding language suggestive of a preponderance-of-the-evidence burden of proof. This does not alter the standards elucidated since *Clewis*, rather it serves only to synthesize the ideas each decision has provided and to acknowledge the necessity for appellate courts to consider the burden of proof at trial when reviewing the factual sufficiency of the evidence. There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? However, there are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand.

*Zuniga v. State*, —— S.W.3d ——, ——, No. 539–02, 2004 WL 840786, at *7, 2004 Tex.Crim.App. LEXIS 668, at *18–20 (Tex. Crim.App. Apr. 21, 2004) (footnote omitted). Grider is correct to the extent that the factual-sufficiency review should be different than the standard set out in the past. We are bound by and apply the factual-sufficiency standard announced in *Zuniga*.

In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This calls on the court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Turner v. State*, 805 S.W.2d 423, 427 (Tex.Crim.App.1991).

When reviewing a challenge to the factual sufficiency of the evidence to support the conviction, we are required to determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga*, 2004 WL 840786, at *7, 2004 Tex.Crim.App. LEXIS 668, at *20. There are two ways in which we may find the evidence to be factually insufficient. First, if the evidence supporting the verdict, considered alone, is too weak to support the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence insufficient. *Id.* Second, if—when we weigh the evidence supporting and contravening the conviction—we conclude that the contrary evidence is strong enough that the State could not have met its burden of proof, we must find the evidence insufficient. *Id.* "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable doubt standard." *Id.* If the evidence is factually insufficient, then we must reverse the judgment and remand for a new trial. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App.1996).

Certainly this record contains evidence tending to support and to undermine a guilty verdict. The jury is entitled to believe certain evidence and to disbelieve other evidence. *See Bustamante v. State*, 106 S.W.3d 738, 741 (Tex.Crim.App.2003). The drunken Cole, in possession of a loaded gun somewhere near him but not in his hand, from a sitting position in his car, lashed out at the drunken Grider with a knife and cut him once on the arm. Grider "defended" by cutting or stabbing Cole over seventy times. We conclude both that the evidence supporting the verdict, considered alone, is strong enough to support the jury's finding of guilt beyond a reasonable doubt, and that—when we weigh the evidence supporting and contravening the conviction—the contrary evidence is not so strong that the State could not have met its burden of proof. From our review of the record, referenced above and elsewhere in this opinion, we hold the evidence was both legally and factually sufficient to support the judgment.

We affirm the judgment of the trial court.