**AFFIRM; and Opinion Filed May 17, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00669-CR**

**LADARUS DEMARQUIS EARL KEYS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-82731-2020**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Garcia, and Kennedy
Opinion by Justice Kennedy

Ladarus Demarquis Earl Keys appeals his conviction for capital murder. On appeal, he challenges the sufficiency of the evidence to corroborate the testimony of an accomplice witness and to establish he committed or intended to commit robbery in the course of committing murder. In addition, appellant asserts the trial court erred in failing to give the jury a jailhouse-witness instruction. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

Appellant was charged by indictment with capital murder having intentionally caused the death of Christopher Collinvitti by shooting him with a firearm in the course of committing or attempting to commit the offense of robbery. Two other individuals, Jacob Malin and Christopher Walker, were also charged with Collinvitti's murder. Malin confessed to his involvement in the murder of Collinvitti and turned State's witness against appellant and Walker. Appellant pleaded not guilty to the charged offense and requested a jury trial.

At trial, the State's witnesses included: Malin; Collinvitti's wife; the medical examiner who performed the autopsy on Collinvitti; various law enforcement officers; a forensic DNA analyst; a firearm and toolmark examiner; a neighbor of the Collinvitti's who heard the gunshots that killed Collinvitti; and Omar Simmons, the individual from whom the murder weapon was stolen. Through these witnesses, and various stipulations of appellant, the State presented evidence showing the following.

Malin has a long criminal history and was often involved in robberies and burglaries as the getaway driver because he has access to a vehicle. On November 7, 2017, Malin reached out to Jole Billiot, a woman with whom he sometimes committed crimes, to see if she had a way for him to make some money. In response, she suggested they commit a house burglary. The target of that burglary was Simmons, an individual with whom Billiot had previously had a relationship that

ended badly. On the afternoon of November 7, 2017, Billiot, along with Walker, a childhood friend of Malin who often committed burglaries and robberies with Malin, broke into Simmons's home. They stole a Sony PlayStation, a watch, a silver handgun, with distinctive engravings on the handle, which would later be used in the murder of Collinvitti, and loaded magazines for the handgun, while Malin waited in the car. After they left Simmons's house, Walker indicated he wanted to make some more money and an argument ensued between Walker and Billiot resulting in Billiot being dropped off at a convenient store.

Malin then contacted appellant, an individual with whom he had previously committed an aggravated robbery, to see if appellant was interested in joining Walker and him in trying to get some money. Appellant was interested, so Malin and Walker drove to appellant's house and picked him up. Malin knew appellant sometimes smoked an embalming like fluid and when they picked him up it appeared he had done so because his manner was aggressive and mean. Walker showed appellant the handgun he stole from Simmons's home, and appellant took it indicating the gun was now his.

Malin, Walker, and appellant drove to a neighborhood in Plano looking for a victim. According to Malin, appellant spotted a random vehicle driving down the road and decided the driver looked like he had money. He instructed Malin to follow the vehicle. When the driver pulled into the driveway of his home, appellant got out of the car, followed by Walker. Seconds later, appellant and Walker ran back to the

–3–

car leaving Collinvitti on the floor of his garage with two gunshot wounds. Appellant looked at Malin with a scared expression and said, "he had to since he thought [Collinvitti] was reaching for something." Appellant was still holding the handgun. At appellant's direction, Malin then drove appellant to a location in Pleasant Grove. He texted Malin that he thought he should kill Walker because Walker knew what had happened. Malin convinced appellant not to do so, indicating Walker was not going to do anything. Appellant then got out of the car. After that experience, Malin wanted nothing to do with appellant.

Police were dispatched to the scene after receiving reports of gunshots. When they arrived, they found Collinvitti lying face down inside his garage between two vehicles, the door to his vehicle still open, with a large pool of blood underneath him. They discovered a thick wallet with money and credit cards in his back pocket that was difficult to remove because of its size.

A neighbor of Collinvitti met with the police and indicated that she came out of her home after hearing gunfire and saw two people running down the alley to a parked car. She described the taillights on the car as being a row in the back panel all the way through the trunk. A surveillance camera captured the car as described by the neighbor and showed it driving off. Police were later able to identify the vehicle as a burgundy Lincoln MKZ.

Three days after the murder of Collinvitti, on November 10, 2017, appellant used the handgun he took from Walker in a shooting at a residence in Dallas. The

shell casings collected from that crime scene matched those collected at the scene of Collinvitti's murder.

On November 12, 2017, Davion Lakes robbed appellant at a market store and took the handgun. Then on November 17, 2017, Lakes and Sebastian Coleman used the handgun in a shooting in Garland.

After the initial investigation of the Collinvitti murder, the case had gone cold. Then, on December 20, 2019, a firearms examiner matched the murder weapon in the Collinvitti case to the November 17, 2017 shooting in Garland. Coleman admitted to his involvement in the Garland shooting and had an alibi for the night of Collinvitti's murder. Lakes admitted to his role in the Garland shooting as well. He also admitted to robbing someone in DeSoto who matched appellant's description and taking the handgun from him. Detectives were able to determine the handgun's serial number from photographs on Lakes' cell phone, which led them back to Simmons. By process of elimination and piecing together other evidence, including FaceBook, cell phone and land line records showing numerous communications between appellant and Malin ending the day after the murder of Collinvitti, and appellant's possession of the murder weapon three days after the murder of Collinvitti, the investigation led to appellant as a suspect in the murder of Collinvitti.

The jury found appellant guilty as charged, and the trial court sentenced him to life in prison without the possibility of parole. This appeal followed.

–5–

## I.    The Accomplice-Witness Rule

In his first issue, appellant urges the State presented insufficient evidence to corroborate Malin's testimony.  The State concedes that Malin was an accomplice in the murder of Collinvitti and asserts it presented sufficient evidence to corroborate his testimony concerning appellant's role in the murder of Collinvitti.

Article 38.14 of the Texas Code of Criminal Procedure provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14.  The rule is statutorily imposed and is not derived from federal or state constitutional principles that define sufficiency standards.  *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).  The rule reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person.  *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998).

In conducting a sufficiency review under the accomplice-witness rule, we eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime.  *Solomon v. State*, 49 S.W.3d 356,

361 (Tex. Crim. App. 2001). We review evidence corroborating accomplice-witness testimony in the light most favorable to the jury's verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008).

To meet the requirements of the accomplice-witness rule, the corroborating evidence need not be sufficient by itself to establish the defendant's guilt and need not directly link the accused to the commission of the offense. *Malone*, 253 S.W.3d at 257; *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). Rather, the evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect the accused to the offense. *Id.* Any independent evidence tending to verify an accomplice witness's version of events is deemed to be corroborative, even if it goes only to a mere detail rather than a substantive connection between the defendant and the offense. *Beathard v. State*, 767 S.W.2d 423, 430 (Tex. Crim. App. 1989). There is no set amount of non-accomplice corroboration evidence that is required for sufficiency purposes. *Malone*, 253 S.W.3d at 257. Each case must be judged on its own facts. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

Here, appellant stipulated to evidence showing he possessed and fired a handgun on November 10, 2017, three days after the murder of Collinvitti, leaving fired shell casings at the site of the shooting, which were collected by the Dallas Police Department. A firearms examiner confirmed the handgun that fired the cartridge cases in the Collinvitti murder fired the same cartridge cases in the Dallas

shooting on November 10. Thus, the evidence showed appellant used the exact weapon involved in the Collinvitti murder in another shooting three days after Collinvitti was murdered. This is independent evidence which tends to connect appellant to the commission of the charged offense. *See Cockrum v. State*, 758 S.W.2d 577, 582 (Tex. Crim. App. 1988) (proof that connects an accused to weapon used in offense is proper corroborating evidence).

In addition, the State introduced evidence showing there had been numerous telephone calls between appellant and Malin prior to and including the day Collinvitti was murdered.[1] At least one of those communications, a message from Malin to appellant on the day of the murder, discussed a need for money.[2] This evidence corroborates Malin's testimony that he had often "linked up" with appellant to procure money. *See Beathard*, 767 S.W.2d at 430 (evidence tending to verify accomplice's story is deemed corroborative, even if it does not establish substantive connection between defendant and offense). Independent evidence showed there were seven calls between appellant and Malin on the day of the murder. This corroborates Malin's testimony that he called appellant on the day of the murder. *See Cockrum*, 758 S.W.2d at 581 (evidence defendant was in the company

---

[1] The Arlington Police Department recovered appellant's phone in connection with a separate investigation on October 24, 2017. Thereafter, police discovered communications between Malin's cell phone and a landline at a residence in DeSoto where appellant lived. Between September 23, 2017, and November 8, 2017, there were 73 calls between appellant's cell phone or the landline and Malin's cell phone, and 24 FaceBook communications between appellant and Malin.

[2] The message from Malin to appellant stated, "bro WYA I need some mula." Appellant responded, "crib pull up."

of accomplice at or near time or place of crime is proper corroborating evidence). Forensic evidence showed that after November 7, 2017, there were no further communications between appellant and Malin. This corroborates Malin's statement that he stopped associating with appellant after the murder.

In addition, the testimony of Simmons and social media communications between Billiot and Malin, evidence independent of Malin's testimony, established Billiot and her associate stole the murder weapon from Simmons's house on November 7, 2017. Police found one of the magazines for this firearm in the getaway vehicle Malin drove at the time of the murder. This confirms Malin's testimony that he assisted Billiot in stealing the murder weapon hours before the murder.

We conclude the foregoing evidence sufficiently corroborated the testimony of Malin and tended to connect appellant with the murder. *See Brown*, 270 S.W.3d at 568–69; *Cockrum*, 758 S.W.2d at 581–82. We overrule appellant's first issue.

## II. Intent to Commit Robbery

In his second issue, appellant asserts the evidence is insufficient to support a finding that, during the course of the murder of Collinvitti, he committed or intended to commit robbery because there is no evidence he actually took any money or property from him. The State responds, urging appellant's argument lacks merit.

In reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether a rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). This is a highly deferential standard, as it is the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh evidence, and to draw inferences from basic facts to ultimate conclusions. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Appellant relies on the fact that there was no evidence showing he succeeded in robbing Collinvitti to urge the evidence is insufficient to show he intended to rob Collinvitti. But a completed theft is not required to establish an intent to commit robbery. *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996). There was significant testimony that the purpose of the encounter with Collinvitti was to commit robbery and that Collinvitti was selected because appellant believed he had money. We conclude the evidence is legally sufficient to show appellant intended to commit the offense of robbery when he shot and killed Collinvitti. We resolve appellant's second issue against him.

## III. Jury Instruction

In his final issue, appellant argues the trial court erred in failing to include a jailhouse-witness instruction in the jury charge. Appellant's complaint centers on Malin's testimony that when he and appellant were both in the same penal institution appellant told him not to say anything and that they were going to beat the case. Appellant contends his jailhouse statement can be inferred as an admission of guilt

–10–

and there is no other reason to offer his statement other than to show his guilt. He further contends that without this testimony there is no connection of appellant to the crime.

We review a claim of jury charge error through a two-step process. *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015). We first determine whether there was error in the charge and, if so, whether that error was harmful. *Id.* If error was preserved, we must reverse the trial court's judgment if the record shows the defendant suffered some harm as a result of that error. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Conversely, we will not reverse for unpreserved error unless the defendant shows that the error was fundamental and that he suffered egregious harm from it. *Id.* Appellant acknowledges that he did not object to the charge. Thus, he must show egregious harm to prevail on appeal. *Id.* Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). Egregious harm is a difficult standard to prove, and such a determination must be made on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996), *Batiste v. State*, 73 S.W.3d 402, 407 (Tex. App.—Dallas 2002, no pet.).

Article 38.075(a) of the code of criminal procedure provides:

A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in

–11–

the same correctional facility as the defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

TEX. CODE CRIM. PROC. ANN. art. 38.075(a). A trial court must sua sponte include an article 38.075(a) jailhouse-witness instruction when applicable to the case. *Phillips*, 463 S.W.3d at 65. When a trial court errs by not giving a jailhouse-witness instruction, we eliminate the jailhouse witness's testimony from consideration and examine the remaining portions of the record to see if there is any evidence tending to connect the defendant with the commission of the crime. *Ruiz v. State*, 358 S.W.3d 676, 681 (Tex. App.—Corpus Christi 2011, no pet.). Therefore, the existence of corroborating evidence tending to connect appellant to the offense will render harmless the trial court's failure to submit an article 38.075 instruction by fulfilling the purpose that such an instruction is designed to serve. *Brooks v. State*, 357 S.W.3d 777, 781–82 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Assuming, without deciding, that Malin's testimony concerning appellant's statement while they both were incarcerated warranted an article 38.075 instruction and that the trial court erred by not including a jailhouse-witness instruction in the charge, we eliminate Malin's testimony regarding appellant's statement and determine whether the remaining evidence tends to connect appellant to the offense. *Id.* at 782.

As discussed above, we have already concluded that Malin's other testimony was sufficiently corroborated. On this record, there is no basis to conclude that the

–12–

only aspect of Malin's testimony that was not corroborated, appellant's request that Malin remain quiet, had a substantial, injurious effect or influence on the jury's verdict. *Martinez v. State*, 662 S.W.3d 496, 501 (Tex. App.—San Antonio 2018, pet. ref'd); *see Washington v. State*, 449 S.W.3d 555, 572 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (once it is determined that independent evidence tending to connect the defendant to the offense exists, the purpose of the jailhouse-witness instruction is fulfilled, and the instruction plays no further role in the factfinders' decision making process).

Moreover, in this case the trial court gave the jury an article 38.14 instruction addressing accomplice-witness testimony. Specifically, the trial court instructed the jury that Malin's testimony could not be used to convict appellant unless there was other testimony in the case that tended to connect appellant with the offense and that corroboration was not sufficient if it merely tended to show the commission of the offense. Under circumstances similar to those presented here, when the individual who testifies as the accomplice witness is also the jailhouse witness, this Court has concluded that the distinction between an article 38.14 and 38.075 instruction is immaterial and that an instruction pursuant to article 38.14 was sufficiently broad to include all of the witnesses' testimony. *Newsome v. State*, No. 05-14-01455-CR, 2015 WL 7302525, at *10 (Tex. App.—Dallas Nov. 19, 2015, no pet.) (mem. op., not designated for publication) ("The distinction is immaterial in this case because

[the witness] was both an accomplice and a jail-house witness, and corroboration is required for both types of testimony.").

On the record before us, we conclude any error in the trial court's failure to give an instruction requiring corroboration of jailhouse-witness testimony was harmless. *Washington*, 449 S.W.3d at 572. We overrule appellant's third issue.

**CONCLUSION**

We affirm the trial court's judgment.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

220669f.u05
Do Not Publish
Tex. R. App. P. 47



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LADARUS DEMARQUIS EARL
KEYS, Appellant

No. 05-22-00669-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 219-82731-
2020.
Opinion delivered by Justice
Kennedy. Justices Pedersen, III and
Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 17th day of May, 2023.