Affirmed and Memorandum Opinion filed June 12, 2008








Affirmed and Memorandum Opinion filed June 12, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-01015-CR

NO. 14-06-01016-CR

_______________

 

LARRY MENDOZA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 177th District Court

 Harris County, Texas

Trial Court Cause No. 1059051 &
1059050

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N








Appellant Larry Mendoza appeals a
conviction for on grounds that: (1) the trial court erred in denying a request
for findings of fact and conclusions of law at the conclusion of the hearing on
the motion for a new trial; (2) appellant=s guilty plea was involuntary, and
therefore entered in violation of the Fifth, Sixth and Fourteenth Amendments of
the United States Constitution; (3) appellant was denied effective assistance
of counsel at the guilt-innocence phase of trial as guaranteed by the Sixth and
Fourteenth Amendments of the United States Constitution; (4) the trial court
abused its discretion in denying appellant=s motion for a new trial due to an
involuntary plea; (5) the appellant was denied effective assistance of counsel
at the punishment phase of trial as guaranteed by the Sixth and Fourteenth
Amendments of the United States Constitution; and (6) the trial court abused
its discretion in denying appellant=s motion for a new trial on
punishment.  We affirm.

I. Background

The police, pursuant to information
from a confidential informant, obtained a search warrant for appellant=s residence where he was living with
his wife and children.  When police arrived, appellant was asleep with his
wife.  During the search, the police found 85 grams of crack cocaine, 616 grams
of powder cocaine, 75.4 grams of ecstacy, 267 tablets of Xanax, and crack
cookies in the easy reach of an unsupervised toddler.  They also recovered over
$16,000 in cash and eight guns, including two pistols, a shotgun, a revolver,
and four rifles B three of which were equipped with scopes and one of which
had been stolen from the Pearland Police Department.  The home contained  a
monitoring system and other security apparatus.  Appellant admitted, on several
occasions, that the drugs belonged solely to himself, and that his wife,
Krystal Villatoro, was not involved. 








At the inception, appellant was
appointed counsel, first Deborah Keyser and then Rick Gonzalez, but his family
subsequently retained its own defense lawyer.  It retained Jonathan Gluckman
and hired Todd Overstreet to advise him.  Apparently unsatisfied with the State=s plea agreement, on September 5,
2006, the family hired Albert Fong (AFong@).  According to the record, Fong
reviewed the State=s file in preparation for trial on September 6th
or 7th.  Fong made his first appearance in the case on September 6,
2006 in a motion to substitute, and presented appellant=s signed waiver agreeing to
appointment of new counsel with under ten days to prepare for trial.[1] 
The court granted the motion on September 8th, the same day as the
case was set for trial.  Also on September 8, 2006, the state moved to have an
amended indictment, adding the aggravating element of gun use/exhibition during
the commission of the drug offense.[2]  Appellant
was advised by Fong to sign this amended indictment.

The prosecutor, Marcy McCorvey, was
concerned about the late appointment of defense counsel, testifying at the
motion for new trial that she felt appellant was Aplaying the system@ and trying to establish an
ineffective assistance of counsel case by bringing in a new lawyer so late. 
Hence, according to her testimony she offered the entire file to Fong and
reviewed it with him.  She even had Fong sign a form, indicating that he had
reviewed the documents in the file.  Appellant=s trial was scheduled for the
following day, September 8, 2006.

Appellant was charged with
possession with intent to distribute a controlled substance and with an
enhancement allegation of possession of a deadly weapon. He entered a guilty plea on September
8, 2006, after consultation with Fong and after turning down the State=s offer of 30 years, opting instead
to have the court assess punishment following the preparation of a presentence
investigation report (PSI).  Fong noted that the strategic reason behind allowing
the court to assign the punishment was that only the court could offer deferred
adjudication in light of the fact that appellant had already broken parole onceBin fact there was
a warrant out for this parole violation at the time of the arrest. At the
conclusion of the PSI hearing, on November 9, 2006, the trial court found the
enhancement paragraph true and sentenced appellant to 50 years in the Texas
Department of Corrections, Institutional Division. 

On January 11, 2007, appellant=s motion for new trial was denied. 
Notice of appeal was timely filed and this appeal follows.

 








II. Standards of Review

A. Motion for a New Trial

The decision to grant a new trial
rests within the sound discretion of the trial court.  State v. Herndon,
215 S.W.3d 901, 906-07 (Tex. Crim. App.  2007).  That discretion, however, is
neither unbounded nor unfettered, and must ultimately be in the interest of
justice and in accordance with the law.  Id.  We do not substitute our
judgment for that of the trial court, but rather look to whether the trial
court=s decision was arbitrary or
unreasonable.  Holden v. State, 215 S.W.3d 761, 763 (Tex. Crim. App.
2006).  In reviewing the decision, we look to the evidence that most favors the
trial court=s decision, and Apresume that all factual findings that could have been made
against the losing party were made against  the losing party.@  Charles v. State, 146 S.W.3d
204, 208 (Tex. Crim. App. 2004).   We find an abuse of discretion only when Ano reasonable view of the record
could support the trial court=s ruling.@  Holden, 215 S.W.3d at 763.

More specifically, a trial court=s denial of a defendant=s motion for a new trial in the face
of a charge of ineffectiveness assistance of counsel is also reviewed for abuse
of discretion.  Webber v. State, No. 14-01-00446-CR, 2002 WL 369925, at
*2 (Tex. App.CHouston [14th Dist.] March 7, 2002, no pet.); see State v. Gill,
967 S.W.2d 540, 541 (Tex. App.CAustin 1998, pet. ref=d).  Therefore, in ruling on the
denial of a motion for new trial, our application of the Strickland test
for ineffectiveness of counsel is not de novo, but rather whether the
trial court abused its discretion in the application of Strickland.   Webber,
2002 WL 369925 at *2; see Gill, 967 S.W.2d at 541.  We overturn the
denial of a motion for new trial only if the trial court=s decision was clearly wrong and
outside the zone of reasonable disagreement.  Cantu v. State, 842 S.W.2d
667, 682 (Tex. Crim. App. 1992).

B. Ineffective Assistance of Counsel:
Generally








Both federal and
State constitutions guarantee a defendant the right to counsel.  See U.S.
Const. Amend. VI; Tex. Const. Art I, sec. 10; Tex. Code Crim. Proc. Ann. art.
1.05 (Vernon 2003).  The right to counsel means the right to effective
counsel.  See Strickland
v. Washington, 466
U.S. 668, 104 S.Ct. 2052 (1984); Ex parte Gonzalez, 945 S.W.2d 830, 835
(Tex. Crim. App. 1997).  When a defendant challenges his conviction or sentence
based upon the ineffective assistance of trial counsel, his challenge is
subject to the two-prong Strickland test: (1) whether counsel's
performance fell below an objective standard of reasonableness; and, if so, (2)
whether there is a reasonable probability that, but for counsel=s error, the
outcome would have been different.  Strickland, 466 U.S. at 669; Thomas v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex.
Crim. App. 1999).  

In reviewing the
first prong of an ineffectiveness of counsel challenge to a conviction, there
is a strong presumption an attorney=s performance is
encapsulated within a wide range of reasonable professional assistance.  Hernandez, 988 S.W.2d at
772.  Appellant
must: (1) rebut this presumption that trial counsel is competent by identifying
the acts and/or omissions of counsel that are alleged as ineffective
assistance; and (2) affirmatively prove that such acts and/or omissions fell
below the professional norm of reasonableness by a preponderance of the
evidence.  McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. App. 1996), overruled on
other grounds by Mosley v. State, 983 S.W.2d 249 (Tex. Crim. App. App.
2001). Such proof must be made on the record, affirmatively demonstrating
the alleged ineffectiveness.  See McFarland, 928 S.W.2d at 500.  An ineffective assistance claim with a
record silent as to trial counsel=s motivations will
generally fail, as the presumption that the attorney=s conduct was
reasonable has not been overcome. Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. App. 2001) (denying
ineffective assistance claim where record is silent as to why counsel did not
request guilty plea withdrawn).  When, however, a motion for new trial is conducted, at which the
testimony of the trial counsel is recorded, such evidence may serve as the
basis for determining ineffectiveness of counsel.  Gibbs v. State, 7 S.W.3d 175,
179 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d) (noting that,
in the absence of a proper evidentiary record developed at a hearing on a motion
for new trial, it is extremely difficult to show trial counsel was
ineffective).  








If counsel=s performance
fails theAobjective reasonableness@ prong of the Strickland
test, the defendant must show that the deficient performance prejudiced the
defense.  Strickland, 466 U.S. at 687.  Lack of success is not
sufficient to prove that the defense was prejudiced.  Id. at 699. 
Rather, this Arequires showing that counsel=s errors were so
serious as to deprive the defendant of a fair trial, a trial whose result is
reliable.@  Id. at 687. The prejudice must be substantial
and have effected the outcome of the trial.  Id. at 696.  In a
bifurcated trial, the prejudice can be at either the guilt-innocence phase or
the punishment phase of the trial. Id. at 668 (applying the same
two-prong approach to both the guilt-innocence and the penalty phase of a
capital case); Hernandez, 988 S.W.2d 771-73 (adopting Strickland
in Texas for all phases of capital and non-capital cases).  

At the guilt-innocence phase of the trial, an appellant must
affirmatively prove that there is a reasonable probability that, but for the
deficient performance by trial counsel, the verdict would have been different. 
Wiggins v. Smith, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534 (2003); Strickland,
466 U.S. at 694; Thompson, 9 S.W.3d at 812. 

In the punishment phase, to assess
prejudice, Awe reweigh the evidence in aggravation against the totality of available
mitigating evidence@ as indicated by the record as a whole.  Wiggins 539
U.S. at 534.  We then determine if the sentence given was significantly more harsh
than the one that might have been given in the absence of counsel=s deficient
performance.  Miller, 420 F.3d at 365.  In making this determination, we
look at the minimum and maximum sentences possible under the relevant statutory
guidelines, the actual sentence handed down by the judge or jury, and all
aggravating and mitigating evidence available.  Id.

C. Ineffective Assistance of Counsel:
Involuntary Plea








It is clearly
established that an involuntary plea must be set aside.  See Tex. Code
Crim. Proc. Ann. art. 26.13(b) (Vernon 2007); Boykin v. Alabama,
395 U.S. 238, 242-43, 89 S.Ct. 1709, 1711-12 (1969).   AThe longstanding
test for determining the validity of a guilty plea is whether the plea
represents a voluntary and intelligent choice among alternative courses of
action open to the defendant.@  Hill v. Lockhart, 474 U.S. 52,
55, 106 S.Ct. 366, 368 (1985). When a defendant enters a plea and later
challenges the voluntariness of that plea based on ineffective assistance of counsel,
the voluntariness of his plea is also subject to the two-prong Strickland
test articulated above: (1) whether counsel=s advice was
within the range of competence demanded of attorneys in criminal cases; and, if
not, (2) whether there is a reasonable probability that, but for counsel=s error, the
defendant would have insisted on going to trial. Salinas v. State, 163
S.W.3d 734, 740 (Tex. Crim. App. 2005); see also Hill, 474 U.S. at
56-58; Ex Parte Moody, 991 S.W.2d 856, 858  (Tex. Crim. App. 1999).  

A defendant=s claim that he
was misinformed by counsel, without more, is insufficient to render a plea
involuntary.  Tabora v. State, 14 S.W.3d 332, 334 (Tex. App.CHouston [14th
Dist.] 2000, no pet.); Fimberg v. State, 922 S.W.2d 205, 208 (Tex. App.CHouston [1st
Dist.] 1996, pet. ref=d).  However, if an attorney conveys
erroneous information to his or her client, and the client enters a plea of
guilty based upon that information, the plea is involuntary based ineffective
assistance of counsel.  See Fimberg, 922 S.W.2d at 207.  In cases
holding a guilty plea to be involuntary, the record must contain confirmation
of the misinformation by counsel, or documents augmenting the defendant=s testimony that
reveal the misinformation and show its conveyance to the defendant, and that
his plea was actually induced by the alleged misinformation. See Brown v.
State, 943 S.W.2d 35, 42 (Tex. Crim. App. 1999) (AMisinformation
concerning a matter, such as probation, about which a defendant is not
constitutionally or statutorily entitled to be informed, may render a guilty
plea involuntary if the defendant shows that his guilty plea was actually
induced by the misinformation.@); Tabora, 14 S.W.3d at 337. 

D. Ineffective Assistance of Counsel:
Sentencing








The sentencing stage of any case,
regardless of the potential punishment, is often the stage at which the
defendant most relies upon his attorney being effective.  See Vela v.
Estelle, 708 F.2d 954, 964 (5th Cir. 1983).  This is all the more true
where the range of punishment includes life in prison.  Milburn v. State,
15 S.W.3d 267, 269 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  In all criminal cases, after a
finding of guilt by either a  judge or a jury, both parties may offer any
evidence relevant to sentencing.  Rivera v. State, 123 S.W.3d 21,
30 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d).  This evidence may include the
defendant=s prior criminal record, character testimony, reputation testimony, or
evidence of extraneous crimes or bad acts the defendant has been shown, beyond
a reasonable doubt, to have committed.  Id. The trial court is required
to afford the defendant the opportunity to present evidence, including
character testimony and evidence of mental-health problems and other
life-challenges, in mitigation of punishment.  Tex. Code Crim. Proc. Ann. art.
37.07 ' 3(a)(1) (Vernon 2003).  

Trial counsel has great latitude in
deciding what testimonial evidence to put forward in mitigation at sentencing,
and decisions not to call certain witnesses is not a favored complaint.  Wilkerson
v. Cain, 233 F.3d 886, 892-93 (5th Cir. 2000).  However, a failure to
uncover and present mitigating evidence cannot be justified as a tactical
decision when defense counsel has failed to conduct a thorough investigation. Wiggins,
539 U.S. at 520; Rivera, 123 S.W.3d at 31.  The choice not to put on
more testimony or to put on only parts of the evidence uncovered in mitigation
is similar to the choice not to investigate.  Coble v. Quarterman, 496
F.3d 430, 441-42 (5th Cir. 2007) (finding counsel=s decision not to call additional
witnesses or conduct further research was reasonable).  Hence, the choices
counsel makes will be deemed to be strategic, and hence deferred to, in direct
proportion to the amount and depth of counsel=s investigation.  Strickland,
466 U.S. at 690-91.  

Nevertheless, information that
indicates mental or emotional injury, even if not sufficient to bar prosecution
under an insanity plea or due to incompetence to stand trial, may be important
to reduce culpability at sentencing, and it is hard to imagine a tactical
reason for not presenting such information.   Miller v. Dretke, 420 F.3d
356, 364 (5th Cir. 2005).  

III. Analysis








Appellant=s first point contends that the trial
court abused its discretion when if failed to make findings of fact and
conclusions of law at the conclusion of the hearing on the motion for a new
trial, as allowed by the Texas Rules of Appellate Procedure, Rule 28.1.
Appellant=s remaining five points contend that he was denied effective assistance of
counsel at both the guilt/innocence phase of the trial and at the punishment
phase of the trial.  He contends that trial counsel=s ineffectiveness
harmed him in three ways: (1) it denied him a fair trial at the guilt/innocence
phase of the trial; (2) it caused him to involuntarily plead guilty to the
charges; and (3) it caused him to incur a significantly harsher punishment.  
As a result of these deficiencies, appellant contends that the trial court
abused its discretion when it denied him a new trial for guilt/innocence and a
new trial for assessing punishment.

A.  Failure of Trial Court to Make
Findings of Fact and Conclusions of Law

While the trial court is permitted to
grant a request for findings of fact and conclusions of law at the conclusion
of the hearing on the motion for a new trial, it is not required to do so. Tex.
R. App. P. 28.1.  At the motion for new trial, appellant requested such
findings,  reminding the court of the change in the rules that grant the court
discretion to do so.  Appellant reminds us that the trial court  Amay@ file such findings and that it is
now Aallowed@ to do so in juxtaposition to the
previous rule.  Appellant continues, however, asking this court to make such a
request binding on the trial court, pointing to other areas where a trial court
is so obliged, such as in response to a motion to suppress.  Such analogy is
neither germane nor consistent with the intent of the new rule, however, and we
decline the offer. 

 Accordingly, we overrule appellant=s first issue.

B. Involuntary Plea: Guilt-Innocence
Phase of Trial 

1. Failure to
Investigate     








Appellant contends
that Fong=s overall failure to investigate generally, and more
specifically his failure to investigate appellant=s educational and
mental health issues, renders his plea involuntary.[3]
 In the case before
us, appellant was ultimately represented by Albert Fong, who testified that he
had been retained by the family to represent appellant only a few days before
trial, and that the first time he reviewed the State=s file (he alleged
he never acquired a copy of Mr. Gluckman=s files because,
after a conversation with him, he believed he would not be able to read the
previous attorney=s files) was the day before the trial was
to commence.  Fong further testified that he chose to rely on the State=s file; he
conducted no additional research; he did not interview the co-defendant or the
police involved in the case; and he chose not to gain a copy of the search
warrant or challenge the search (having seen a copy in the State=s file he opined
it looked legally sufficient).  Fong filed no pre-trial motions; made no
independent investigation of the alleged charged offenses; did not delve into
appellant=s educational or mental-health background; and failed
to have a mental-health expert appointed.[4] 
Instead, Fong assured the family, on September 5th or 6th,
and the lead prosecutor in the case, that he had sufficient enough time to
become familiar with the case and prepare for trial.  As evidence of his
confidence he even had appellant waive the statutory right to ten days
preparation for trial and, subsequent to attaining the State=s file,  signed a
statement to the prosecutor that he had adequately reviewed the documents
therein.  








According to the
prison records, Fong only met with appellant four times, three of which were in
the truncated three-day period before he pled guilty to the charges.  The first
meeting was on September 5th, 2006, at approximately 2 pm (before he
had been officially retained by the family).  On September 6th he
returned at approximately 10:40 am, and then again on the September 7th
at approximately 9:15 am.  Fong was unable to recall if he had retained and
read the State=s file on the 6th or on the 7th.[5]  
Either way, on September 7th, Fong both moved to substitute counsel
and presented Appellant with three possible options for the next day=s commencement of
trial (discussed below). 

Fong had a duty to
make an independent investigation of the facts of the case and to interview
possible witnesses.  McFarland, 928 S.W.2d at 501; Ex parte Welborn,
785 S.W.2d 391, 393 (Tex. Crim. App. 1990).   The United States Supreme Court has held: AStrategic choices
made after thorough investigation of law and facts relevant to plausible
options are virtually unchallengeable; and strategic choices made after less
than complete investigation are reasonable precisely to the extent that
reasonable professional judgments support the limitations on investigation.@  Wiggins, 539 U.S. at
521-22.  In other words, although no categorical requirement mandated Fong
conduct an independent investigation, it did mandate that he make a reasonable
decision that particular investigation was unnecessary.  Id.; Strickland,
466 U.S. at 688-89.   What is clear is that Fong conducted no investigation
beyond the State=s file and his interview with appellant before preceding to
counsel appellant on his trial options.  What is uncertain is the degree to
which he determined, in light of his interview with appellant and the multiple
confessions, that an independent investigation was unwarranted.  See Strickland,
466 U.S. at 691(noting that attorneys are entitled to rely on what their client
tells them).             








This type of last-minute
representation devoid of any independent research is clearly not exemplary, and
might even constitute unreasonable representation.[6]  It does not, however, invalidate his
guilty plea as a matter of law. Appellant cites to Ex parte Duffy, for
that proposition.  607 S.W.2d 507, 516 (Tex. Crim. App. 1980).  What he fails
to note is that Ex parte Duffy was expressly overruled by Hernandez,
in which the Texas Court of Criminal Appeals adopted the Strickland test. Hernandez, 988 S.W.2d at
770.  Under Strickland, Aeven if professionally unreasonable,
[counselor=s errors] do not warrant setting the conviction aside@ when it appears
the errors had no impact on the judgment.  Strickland, 466 U.S. at 693; Mohammed
v. State, No. 14-06-00149-CR, 2007 WL 582367, at *2 (Tex. App.CHouston [14th
Dist.] Feb. 27, 2007, no pet.).  Under the second prong of Strickland, A[w]e will not reverse a conviction
unless the consequence of the failure to investigate is that the only viable
defense available to the accused is not advanced . . . [and] there is a
reasonable probability that, but for counsel=s [failure to advance the defense],
the result would have been different.@  See Ex parte Ybarra, 629
S.W.2d 943, 946 (Tex. Crim. App. 1982); Martin v. State, CS.W.3d C, 2007 WL 2743513, * 3 (Tex. App.CHouston [1st Dist.] Sep. 20, 2007, no
pet.) (citing McFarland, 928 S.W.2d at 501); Cano v. State, No.
14-06-00377-CR, 2007 WL 2872418, at *4 (Tex. App.CHouston [14th Dist.] Oct. 4, 2007,
superceding opinion). 

Hence, to prevail on an allegation
that trial counsel failed to investigate, appellant would have to show that a
decision not to do so was not a reasoned trial strategy and that there
was some evidence, or that witnesses were available, which when presented would
have afforded him a meaningful defense that renders the verdict unreliable.  See
Wiggins, 539 U.S. at 520; Strickland, 466 U.S. at 694; see Ex
Parte McFarland, 163 S.W.3d 743, 754-55 (Tex. Crim. App. 2005); Thompson
v. State, 9 S.W.3d 808, 812 (Tex Crim. App. 1999). Hernandez, 988 S.W.2d
771-73.[7] 
Appellant fails to show that, but for Fong=s failure to
conduct a thorough investigation, he would have chosen not to plead guilty and
would have chosen to go to trial.  See Salinas, 163 S.W.3d at 740; see
also Hill, 474 U.S. at 56-58; Ex Parte Moody, 991 S.W.2d at 858. 








Likewise, it is hard to see
how counsel=s failure to investigate appellant=s mental or
educational background renders his plea involuntary, especially as he is not
trying to argue incompetence to stand trial or put on an insanity defense.[8] 
Any failure to investigate appellant=s history of
mental or emotional problems, while possibly relevant to punishment as
discussed below, has no apparent bearing on the voluntariness of his plea.[9] 
Hence, as any
investigation of appellant=s mental health or education  is unlikely to have provided
appellant a viable defense, this failure cannot have rendered his plea
involuntary.  See Wiggins, 539 U.S. at 520; Strickland, 466 U.S.
at 694; Ex Parte McFarland, 163 S.W.3d at 754-55; see also Thompson,
9 S.W.3d at 812; Hernandez, 988 S.W.2d 771-73.

Hence, although ordinarily a lawyer
should not rely solely on the information in the State=s file, see McFarland, 928
S.W.2d at 501, it is incumbent upon the appellant to point out what would have
been found if counsel had conducted his own research and how it prejudiced the
defense B in this case, rendered the plea
involuntary.  See Ex Parte McFarland, 163 S.W.3d at 754-55.  Appellant provides
no evidence that his decision to plead guilty would have been different had
Fong conducted an investigation of either the alleged offence or his mental and
educational history, nor what exculpating evidence might have been found in
such a search.  Hence Fong=s failure to conduct a more thorough
investigation does not render appellant=s plea
involuntary.

 

 








2.  Failure to
Provide All Available Plea Options 

Fong also contends
that his plea was involuntary because he lacked the information he needed to
make a voluntary plea, having been provided an insufficient breadth of choices.
On September 7, Fong presented appellant with three options for the following
day: (1) the right to a trial by a jury with a possible sentence of 15-99 years
or life; (2) a 30 year plea agreement with the State, of which 15 years would
be mandatory; and (3) the option of a guilty plea that allowed the court to
ascertain the punishment following the completion of a PSI, ranging from
deferred adjudication to life in prison.   








The hand-written
list of options is undersigned ALarry@ next to a
notation AAfter consulting w my attorney, I chose option
# III.@  The record
affirmatively shows that Fong presented these three options to appellant, one
of which constituted going to trial and the other two requiring appellant to
plead guilty either with or without the acceptance of a plea bargain.  
Appellant contends that there was a fourth option available,  a plea of guilty
followed by jury sentencing, and that he would have selected that option.  The
evidence does not affirmatively prove that Fong did not advise appellant of Aoption 4," as
the State points out, but it does reflect that Fong provided appellant with
three options from which to chose, and it would be fair to assume that, given
how expressly they are recorded, no other options were discussed.         The
question under the first prong of Strickland, then, is whether the three
options presented were sufficient to rise to the level of competent counsel. 
This fact, in and of itself, is debatable. While there is a litany of
complaints against Fong in regards to his preparation for trial, it is hard to
determine if an attorney with more adequate preparation would have presented
appellant with Aoption 4,@ because even if
appellant chose to have a jury assess the punishment instead of the court,
appellant fails to indicate why he believes a jury would come to a different
decision than the court.  It is not at all certain that option 4 is
significantly different than option 3 under the circumstances, and the jury
could not have offered deferred adjudication.  However, we need not address
this point because appellant=s argument fails on other grounds. 
Assuming, arguendo, that Fong=s representation
fell below that of reasonable counsel, there is a clear indication that Mendoza
could not meet either the challenge under Tabora that appellant
relied upon the misinformation in making his guilty plea or, relatedly,
prong two of the Strickland test that Abut for@ the
misinformation he would have chosen to go to trial.  See e.g. Ex parte
Battle, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991) (requiring and finding
both unreasonable and prejudicial the affirmative act of offering the
hope of probation where such was not, statutorily, an option in the
proceeding); see also Tabora, 14 S.W.3d at 337.  The evidence of guilt
in this case is overwhelming, coupled with multiple confessions, and at no time
does the appellant indicate that he would have preferred a trial on
innocence/guilt B appellant only intimates that he would
have chosen a different format in pleading guilty.  As such, the criteria for
determining that a guilty plea was involuntary, on this basis alone, is not met
under these facts.

3.  Failure to
Record Plea Hearing








Finally, appellant
attacks the voluntariness of his plea noting the failure of counsel to have the
plea hearing recorded.  This defect, usually, would be waived in the absence of
an objection by trial counsel or when it is plausible that trial counsel was
acting strategically.[10]
See Burroughs v. State, No. 14-97-01213-CR, 1999 WL 496972, *3 (Tex.
App.CHouston [14th
Dist.] July 15, 1999, no pet.).  Fong admits that the decision to forego a
recording of the plea hearing was due to his lack of understanding of the
appellate process, specifically he did not understand how error could be better
preserved, and not due to any reasoned trial strategy.  Nonetheless, Appellant
points to no error made at the plea hearing, or how a record of the proceeding
would have demonstrated error.  See Burroughs, 1999 WL 496972 at *3. 
Appellant signed all the admonishments required, and that serves as prima facie
evidence of a voluntary confession.  See Igwe v. State, No. 14-98-00594-CR,
2000 WL 1508807, at *2 (Tex. App.CHouston [14th
Dist.] Oct. 12, 2000, pet. ref=d) (noting that a written record with
proper admonishments, even if no recording of hearing is made, suffices). 
Hence, while Fong may have been unreasonable in not requesting the plea hearing
be recorded, Appellant has made no argument of any resultant prejudice. 

4.  The Plea was
Voluntary        

There is little doubt that Fong=s representation was less-than
stellar and arguably unreasonable, including his failure to take the time to
conduct an independent investigation and his failure to have the plea hearing
conducted on the record.  Wiggins, 539 U.S. at 521-22; McFarland,
928 S.W.2d at 501.  However, regardless of how objectively unreasonable Fong=s performance
might have been, we cannot say that, but for trial counsel=s ineffective
assistance, appellant would have insisted on going to trial.  See Ex parte
Moody, 991 S.W.2d at 857-58; see also Rivera, 123 S.W.3d at 33
(noting that where the record does not make clear that defendant would not have
pled guilty but for the error, no reasonable probability exists that the
outcome would have been different) (Justice Hedges, concurring).  Appellant
made several pleas of guilt from the time of the arrest to the time of his
trial, at least in part to shield his wife from culpability, and as no evidence
in the record indicates that these were invalid or that some viable defense
would have resulted from an independent investigation of either the facts of
the case or of appellant=s history of mental and emotional
problems, any error was insufficient to overturn the conviction.  

Accordingly, we
overrule appellant=s second, third, and fourth points of
error.  

 C. Punishment Phase of the Trial








Appellant also asserts his trial
counsel constituted ineffective assistance of counsel at the punishment phase
of the trial on three grounds.  First, he alleges that trial counsel was
obliged to call witnesses to testify to his good character and rehabilitative
nature.  Secondly, appellant contends Fong was required to put on evidence of
appellant=s poor education and history of mental health problems (including expert
assessment and testimony).  Third, appellant alleges that counsel was obliged
to have the sentencing hearing recorded, and that references made to Scarface
during sentencing prejudiced him.  We address each of these under the Strickland
test, looking first to the reasonableness of these alleged failures.

1.  Failure to Put On Character
Witnesses

In preparation for the punishment
phase of the trial, Fong made many decisions with regard to what mitigating
evidence to present to the court, including asking Mary Salinas, Appellant=s mother, to write a letter to the
judge, giving her a few reference letters to use for guidance.  He also had the
defendant write up an acceptance letter which he edited in preparation for the
sentencing.  In addition, Fong testified that he spoke on the phone and in his
office with Wilson Brice, who came forward with a good letter that was Aon point.@  A letter was also submitted by
Pamela C. Lopez, appellant=s cousin.  Fong also decided to reject some letters from
friends, brought in by the family, because they simply asserted that appellant
was Aour home-boy@ and that he should be allowed to
return to his family because he would never put his kids in danger.  

At the sentencing hearing, however,
it is uncontested that trial counsel did not call any witnesses to testify on
appellant=s behalf, even though both Wilson Brice and Marie Ellen Estrada were
available and in the court room during the hearing, as purported in their
affidavits.  Mr. Fong stated, however, he had a reason for not calling Wilson
Brice.  He testified that, though he wrote a good letter, Brice was not called
because he was adversarial to the family.  See e.g Ex parte McFarland,
163 S.W.3d at 757-58 (concluding counsel was not ineffective in making a
strategic decision not to call a favorable mitigation witness).








While it would be easy to find Fong=s decision not to provide testimony
on appellant=s behalf at sentencing unreasonable, it cannot be said that Fong did not
make some strategic choices on which evidence to present to the judge (he
indicated that his sentencing strategy would center on appellant=s mental health issues, discussed
below), and while trial counsel did not utilize the full arsenal available to
him, he did put on some evidence in mitigation and had strategic reasons for
not utilizing other evidence. See Coble v. Quarterman, 496 F.3d 430,
441-42 (5th Cir. 2007) (making a distinction between conducting no
investigation/putting on no mitigating evidence and a choice to put on some,
but not all, mitigating evidence).  Had he put on no mitigating evidence, his
representation could be deemed unreasonable.  See Shanklin v. State, 190
S.W.3d 154, 165 (Tex. App.CHouston [1st Dist.] 2005, pet. dism=d) (finding prejudice where attorney
put on no mitigating evidence and called no witnesses at all); Milburn v.
State, 15 S.W.3d 267, 270 (Tex. App.CHouston [14th Dist.] 2000, pet ref=d) (finding trial counsel ineffective
for not interviewing any witnesses, conducting no investigation, and providing
no mitigating testimony at sentencing).  

In this case, Fong made some choices,
conducted some investigation of mitigating evidence, and then made a selection
on which to put forward.  See e.g Smith v. State, No. 14-03-01174-CR,
2005 WL 646118, at *7 (Tex. App.CHouston [14th Dist.] March 22, 2005,
pet. ref=d) (noting that under Strickland,
choices made after reasonable investigation are virtually unchallengeable).  As
such, his failure to call Wilson Brice and Marie Ellen Estrada as witnesses, or
to subpoena Pamela C. Lopez, does not, in itself, constitute objectively
unreasonable performance under the first prong in Strickland.

2.  Failure to Put On Expert
Testimony as to Mental Health Issues

Aside from not calling character
witnesses, however, appellant also contends trial counsel failed to present
expert medical testimony concerning his mental-health problems. This is hard to
comprehend as Fong himself indicated that his hope in getting deferred
adjudication, and hence his belief that Aoption three@ of relying on the court to hand down
the sentence, was centered around appellant=s mental illness.[11] 









Fong did contact the Mental
Health-Mental Retardation Authority of Harris County (MHMRA) and have them
contact Appellant in the Harris County Jail to get him back on his medication. 
Shortly thereafter, Fong requested Appellant=s medical records from the MHMRA,
which evinced Appellant suffered from major depressive disorder and anxiety
disorder.  Previous medical records also indicated that appellant had been
diagnosed as schizophrenic and bi-polar, and had been placed on medication to
treat these conditions.  Yet in preparation for sentencing, Fong failed to hire
a medical expert or have one appointed, did not have any new evaluation of
Appellant conducted by a medical expert, failed to explore further appellant=s social history or educational
deficiencies, and failed to even subpoena the MHMRA treating doctor, even
though expert testimony is vital to explaining the links, if any, between a
criminal act and the mental and emotional illnesses of the accused.  See
Miller, 420 F.3d at 363 (noting that the expert testimony might have
explained the offense and give the jury such information as would have,
possibly, inclined them to offer probation). 








There is no evidence that these
decisions were made for strategic reasons, as Fong admitted conducting no
independent investigation of appellant=s background and not hiring a mental
health expert for financial reasons, as the family did not have the money and
he thought the court would turn down his request for an appointed mental health
expert because Fong had been retained by the family.  This financial
consideration does not constitute a strategic decision by counsel, as counsel
had other avenues open to him to procure expert testimony under Ake v.
Oklahoma, 470 U.S. 68, 105 S.Ct. 1087 (1985).  See Ex Parte Briggs,
187 S.W.3d 458, 467-470 (Tex. Crim. App. App. 2005) (concluding that counsel=s failure to subpoena treating
doctors or apply for appointment of a medical expert prevented him from
providing effective assistance of counsel, and noting financial reasons do not
constitute strategic reasoning); see e.g. Wright v. State, 223 S.W.3d
36, 43-44 (Tex. App.CHouston [1st Dist.] 2006, pet ref=d) (finding failure to hire expert
fell below reasonable assistance of counsel). Likewise, merely relying on the
fact that evidence of Appellant=s mental and emotional illness and truncated educational past
were available to the judge in the PSI is not a substitute for further research
or expert testimony.  See e.g. Miller, 420 F.3d at 364 (noting that
expert testimony, though redundant, might help to show the defendant less
culpable).   In the absence of a full investigation and full development of
this mitigation evidence, it cannot be said that a reasoned trial strategy
controlled the decision.  Wiggins, 539 U.S. 523-28.  

This clearly amounts to objectively
unreasonable performance, satisfying prong one of Strickland, given the admitted
strategy to make appellant=s mental illness central to a request for deferred
adjudication and offering no plausible strategy for failing to offer such
evidence in mitigation. See Raines v. State, No. 02-04-500-CR, 2005 WL
1654880, at *2-3 (Tex. App.CFort Worth, July 14, 2005, no pet.) (finding no ineffective
assistance where plausible strategy explained why attorney did not put
on mitigating evidence of mental illness). 

Given our assessment that Fong=s performance was objectively
unreasonable with regard to failure to put on expert mental-health testimony, appellant
still bears the burden to show that, but for counsel=s unreasonable performance, the
result of the proceeding would have been different. See Strickland, 466
U.S. at 694; Ex parte Gonzalez, 204 S.W.3d 391, 399 (Tex. Crim. App.
2006).  We are tasked with assessing the prejudice, and weighing the evidence
in aggravation against the totality of available mitigating evidence in the
record.  Wiggins 539 U.S. at 534.   In making this assessment, we look
to see if the additional mitigation evidence was sufficient, taken as  a whole,
to influence the trial court=s appraisal of the applicant=s moral culpability and resultant punishment. 
See e.g. Ex parte Gonzalez, 204 S.W.3d at 393 (noting that the
additional evidence presented at defendant=s habeas hearing, including the
expert testimony of a psychiatrist, would likely have been effective if
presented during the original sentencing hearing in reducing the defendant=s moral culpability in the eyes of
the jury, leading to a reduced sentence).








Specifically, at the punishment phase
of the trial, we look to see if there is a reasonable probability that the
assessment of punishment would have been significantly less severe in the
absence of defense counsel=s inadequate performance.  See Miller, 420 F.3d at 365
(adding that the range, and the relative placement within the range, are
relevant considerations in light of the mitigating and aggravating evidence); Batiste,
73 S.W.3d 402, 407.  In
this case, Appellant was facing 15-99 years, with the possibility of life in
prison.  He received 50 years, or exactly half of that possible.  See e.g.
Houston v. State, No. 03-04-00620-CR, 2006 WL 2504992, at *5 (Tex. App.CHouston [14th Dist.] Aug. 31, 2006, 
) (finding an assessment of 75% of the available punishment a difficult hurdle
in proving a significantly more severe punishment had been handed down when
there is evidence of guilt and no articulation of how the evidence might have
induced a reduced sentence).  

The length of the term was, in part,
due to pleading true to the aggravating use/exhibition of a firearm during the
commission of the underlying offense of drug possession with intend to
distribute.  The other pertinent circumstances were detailed by the lead prosecutor,
Marcy McCorvey.  She testified that Appellant admitted full culpability before
the magistrate at the probable cause hearing and again in his first appearance
before Judge Anderson when represented by Deborah Keyser (his first
court-appointed attorney).  McCorvey further testified that, if the case had
gone to a jury, she is confident Appellant would have been sentenced to life in
prison.  Her supposition is based upon the facts of the arrest: (1) there were
crack cookies throughout the residence and in reach of an unsupervised toddler;
(2) more crack cookies were in the oven; (3) there were drug paraphernalia
throughout the residence; (4) the house was a Afortress with security devices@ indicating this was a drug dealer=s residence; (5) there were
sufficient drugs of various types to indicate appellant was a dealer; and (6)
there were guns everywhere, including in the dresser next to the bed and
another under the bed.  In addition, McCorvey testified that appellant was on
probation and wanted for a probation violation at the time of the arrest B hence appellant was a felon in
possession of firearms.  As such, the state had offered a 30 year plea bargain,
considering that a more lenient punishment than a jury would have administered
after a full trial (the sworn affidavit of Marie Ellen Estrada noted that Fong
believed a jury would assess punishment at 60 years to life). 








The Judge passed down sentence in
light of this evidence, along with a fully admonished guilty plea, and such
evidence as was offered in mitigation, including the PSI and the three letters
Fong submitted.  In this case, there is no allegation that the information
contained in the PSI, and before the judge, was incorrect.  Appellant failed to
carry his burden to come forward with new mitigation evidence that demonstrated
that there is a reasonable probability that the judge would have handed down a
significantly reduced sentence had it been admitted in mitigation.  See
Rivera, 123 S.W.3d at 32 (noting that prejudice can only be shown where
sufficient new evidence would have tipped the scales in defendant=s favor).  

In this case, there is some evidence
of what was not offered, including testimony of a medical expert as to the
impact of Appellant=s mental illness and expert testimony as to his limited
educational aptitude.  While it is clear trial counsel failed to fully conduct
an investigation and failed to develop appellant=s mental illness history and
educational deficiency, appellant has failed to provide any explanation of how
this might have changed the result of the sentencing, especially as the judge
did have the PSI in front of him and was  aware that appellant had little
education and some history of mental illness already.  See e.g. Starr v.
State, No. 13-99-381-CR, 2000 WL 34253854, at *3 (Tex. App.CCorpus Christi April 13, 2000, no
pet.) (noting that when the judge had the medical reports before him, it cannot
be said with certainty that psychiatric testimony would have changed the
result); see also Batiste v. State, 73 S.W.3d 402, 409 (Tex. App.CDallas, 2002, no pet.) (noting that
when a determination of guilt is made on many different grounds, understanding
the impact of one piece of evidence is impossible); Asher v. State, No.
14-06-00539-CR, 2007 WL 853824, at *2 (Tex. App.CHouston [14th Dist.] March 22, 2007,
pet. ref=d) (noting that when a claimant makes
the allegation that counsel should have put on additional testimony, he bears
the burden to demonstrate what that testimony would have shown and how it would
have been helpful to him) .

 

 








3.  Failure to Have the Sentencing
Hearing Recorded

Finally, appellant alleges that trial
counsel=s performance was objectively
unreasonable when he failed to have the sentencing hearing recorded, also
alleging that prosecution=s reference to Scarface during its closing remarks
prejudiced appellant=s sentencing.  It is uncontested that the sentencing hearing
went unrecorded, and in support of Fong=s recollection that the term Scarface
was used by the prosecution, the unsworn affidavit of appellant and two
sworn affidavits of other witnesses corroborate the claim.  As noted above, failure to record
a plea hearing is waived where counselor fails to object.[12]  
In this ineffective assistance of counsel charge, the record is silent why Fong
did not request to have the hearing recorded, and hence  the presumption that
trial counsel was reasonably effective remains.  See Burroughs , 1999 WL
496972 at *3 .  In addition,
even if we were to find Fong=s failure to have the hearing recorded constituted
ineffective assistance of counsel, and the record reflected that the prosecutor
did in fact make reference to Scarface, appellant would still have to
prove prejudice.  See e.g.  Ex Parte McFarland, 163 S.W. 3d at 759
(finding complainant failed to show the objectionable comment prejudiced the
jury=s determination of punishment).  For
the same reasons that we found above, appellant has not demonstrated that this
single reference caused the court to assess a stiffer penalty than it would
otherwise have done.

We therefore conclude that there is
no reasonable probability, sufficient to undermine our confidence in the
outcome of the case, that but for the deficient performance of trial counsel,
the result of the proceedings would have been different.  See Briggs,
187 S.W.3d at 470 (quoting Hill, 474 U.S. at 59-60).  

Accordingly, we overrule appellant=s fifth and sixth points of error.

 

 








IV. Conclusion

Accordingly, the judgment of the
trial court affirmed.

 

 

/s/        Paul C. Murphy

Senior Justice

 

Judgment rendered and Memorandum
Opinion filed June 12, 2008.

Panel consists of Chief Justice
Hedges, and Justices Anderson and Murphy.*

Do not publish C Tex. R. App. P. 47.2(b).

 

 









[1]           See Tex. Code Crim. Proc. Ann. art 1.051(e)
(mandating ten days to prepare for a proceeding but allowing a waiver of such);
see also Rivera v. State, 123 S.W.3d 21, 32 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d) (noting error with regard to 1.051(e) is subject to
harm analysis).





[2]           Appellant contends that, as part of his
guilty plea, Fong agreed to try to have the judge withhold an affirmative
finding of a deadly weapon.  There is nothing in the record indicating that
appellant ever used or displayed the guns found in his home during his arrest. 
Nonetheless, appellant does not indicate that Fong was ineffective for failing
to adequately counter the aggravating paragraph to which he pled true as part
of his guilty plea.





[3]           The code of criminal procedure requires the
trial court to admonish a defendant, either orally or in writing, before
accepting a guilty plea in a felony case.  Tex. Code Crim. Proc. Ann. Art
26.13(a) (Vernon Supp. 2003).  While the guilty plea was not recorded, the
record does contain the admonishments made by the court, and as such there is a
prima facie showing that the plea was entered voluntarily and knowingly.  Grays
v. State, 888 S.W.2d 876, 878 (Tex. App.CDallas
1994, no pet.)





[4]           Fong testified that he thought previous
counsel, Mr Gluckman, has possibly filed a motion to suppress, but he could not
really remember.





[5]           Fong did not visit with appellant again, excepting his
trial date on the 8th, until October 16th. 





[6]           But see Wilkerson v. State, 726
S.W.2d 542, 551 (Tex. Crim. App. 1986)(conceding the many defects in counsel=s representation, but finding representation
reasonable in light of the fact that counsel talked to family and the defendant
and reviewed the State=s file); see also Scheanette v. State, 144
S.W.3d 503, 509-510 (Tex. Crim. App. 2004) (noting how difficult it is to find
representation unreasonable for inaction when the record does not detail the
reason for the inaction).  





[7]           Appellant also criticizes his trial
attorney for not filing any pretrial motions.  This, however, does not
categorically constitute ineffective assistance of counsel without some
evidence of how this decision hurt the defendant.  Martin, 2007 WL
2743513 at *5.  Hence, while appellant challenges Fong=s failure to challenge the search warrant or move to
suppress evidence in the case, he provides no viable argument on how these
might have been successful.  To the contrary, all evidence points to the fact
that the search warrant was legally sound and the evidence garnered was
untainted by any constitutional violation.





[8]           See Wilkerson, 726 S.W.2d at 551 (finding counselor=s failure to demand a competency
hearing or put on an insanity defense reasonable where defendant appeared to
understand the charges and cooperated with his attorney and no evidence
indicated he was insane at the time he committed the crime); Miller, 420
F.3d at 364 (noting that even when no insanity plea or incompetency claim are
being made at the guilt/innocence phase of a trial, evidence of mental health
problems help reduce culpability at sentencing).





[9]           Pena v. State, No. 14-06-00637-CR,
2007 WL 3287868, at *8 (Tex. App.CHouston
[14th Dist.] Nov. 6, 2007, pet. filed) (noting appellant=s defense was one of accident, and it was unclear how
the records would have been relevant to that defense such that reversal was
mandated).  





[10]         Tex. R. App. P. 33.1(a); Curry v. State, 910
S.W.2d 490, 497 (Tex. Crim. App. 1995); Nicolas v. State, 56 S.W.3d 760,
768 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d).





[11]         Fong=s
contention, however, that his strategy was centered upon Appellant=s mental illness is problematic.  While he suspected
some educational deficiency at the time he advised Appellant on the three
options before him, he did not become fully aware of the depth of his mental
illness or educational deficiencies until he received the MHMRA evaluation over
a month later.





[12]         Tex. R. App. P. 33.1(a); Curry v. State, 910
S.W.2d 490, 497 (Tex. Crim. App. 1995); Nicolas v. State, 56 S.W.3d 760,
768 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d).





*           Senior
Chief Justice Paul C. Murphy sitting by assignment.