

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-16-00007-CR

LAMONTE WESLEY BROWN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd District Court
Dallas County, Texas
Trial Court No. F-1434606-V

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

A jury convicted Lamonte Wesley Brown of aggravated sexual assault of a five-year-old child, Eddy.[1] For this first degree felony offense, the trial court sentenced Brown to thirty years' imprisonment and ordered him to pay a $5,005.00 fine.[2] On appeal,[3] Brown argues that the trial court improperly expressed its approval of the State's allegedly improper definition of reasonable doubt, the trial court improperly commented on the weight of the evidence by informing the jury that a witness was an expert witness, the trial court commented on the weight of the evidence by informing the jury that the State was asking a defense witness about a prior inconsistent statement, the trial court violated Brown's common-law right of allocution, and Brown's counsel rendered ineffective assistance.

We affirm the judgment of the trial court, because (1) the trial court did not express its approval of the State's definition of reasonable doubt, (2) Brown preserved no error regarding the trial court's calling a witness an "expert" or explaining that the State was inquiring about a prior inconsistent statement, (3) Brown preserved no error regarding the trial court's handling of Brown's right of allocution, and (4) ineffectiveness of Brown's trial counsel was not established.

---

[1]We use pseudonyms for the victim's immediate family in this opinion in order to protect the identity of the child victim.

[2]The minimum sentence for this offense was twenty-five years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.021(f)(1) (West Supp. 2016).

[3]Originally appealed to the Fifth Court of Appeals in Dallas, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Fifth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

*(1)*     *The Trial Court Did Not Express Its Approval of the State's Definition of Reasonable Doubt*

During voir dire, the State objected when Brown's counsel told the venire that "[t]he only thing that can be is whether there is doubt or not." After making its objection, the State added, "It has to be beyond a reasonable doubt. The doubt has to be based on reason and common sense, not just anything." The trial court sustained the objection and asked Brown's counsel to "clear that up," which prompted Brown's counsel to explain, "The doubt has to be beyond a reasonable doubt. That's the standard, beyond a reasonable doubt." On appeal, Brown argues that, by sustaining the State's objection, the trial court adopted and improperly defined reasonable doubt as a doubt based on reason and common sense. We disagree.

The State's objection to Brown's statement was proper since "whether there is doubt or not" is certainly not the burden of proof in a criminal trial. The trial court sustained the State's objection, and Brown does not argue that the objection was incorrectly sustained. Instead, Brown argues that the trial court somehow expressed its approval of the State's allegedly improper definition. However, nothing in the reporter's record indicates that the trial court expressed its opinion of the State's extraneous statement one way or the other. Instead, the trial court gave Brown's counsel the opportunity to clarify the proper burden of proof. Because the trial court did not define reasonable doubt or adopt the State's definition of reasonable doubt, we find Brown's first point of error meritless and overrule it.[4]

---

[4]Moreover, had the trial court expressed its opinion on the State's definition of reasonable doubt during voir dire, Brown would have been required to express his disagreement in order to preserve error on this point. *See Billy v. State*, 77 S.W.3d 427, 429 (Tex. App.—Dallas 2002, pet. ref'd).

3

*(2)     Brown Preserved No Error Regarding the Trial Court's Calling a Witness an "Expert" or Explaining that the State Was Inquiring about a Prior Inconsistent Statement*

In two points of error, Brown argues that the trial court impermissibly commented on the weight of the evidence (1) by referring to the State's witness as an expert witness, and (2) by informing the jury that the State's questioning of a defense witness was in reference to a prior inconsistent statement. Since Brown failed to preserve these complaints, we overrule these two points of error.

Brown's complaint about the trial court's characterization of a witness as an "expert" involves an evidentiary ruling by the trial court. Before trial, the State designated employees of the Dallas Children's Advocacy Center (DCAC) as expert witnesses. At trial, the State called DCAC's clinical director, John Edmundson, to testify. Edmundson explained the process of grooming, reasons for delayed outcries, and changes in victim behavior following abuse. After this testimony, the State asked Edmundson whether he had treated Eddy. After Edmundson clarified that he did not treat the child, but that Eddy had received treatment at the DCAC, the following dialogue transpired:

> Q.      [By the State]:  So the opinions that you've given here today, that's based on your training and experience?
>
> [By the Defense]:     Objection, Your Honor, the witness has no contact with this case.  His testimony is irrelevant.
>
> THE COURT:  Overruled.  Go ahead.  He's an expert.
>
> Q.      [By the State]: The opinions that you've given here today, are they based on your own personal experience and what you've been trained in, your education, as well as the principles, established principles in your area of expertise?
>
> A.      Yes, ma'am, that's correct.

4

On appeal, Brown does not claim that the trial court's relevance ruling under Rule 702 of the Texas Rules of Evidence was incorrect.[5] Instead, he argues that the trial court's ruling informed the jury that the witness was an "expert" and that this reference constituted a comment on the weight of the evidence because it "clearly vouched for the credibility and credentials of Edmundson."[6] Brown did not preserve this issue.

"As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion . . . ." TEX. R. APP. P. 33.1(a)(1). "A defendant's right not to have the trial judge comment on the weight of the evidence or convey his opinion of the case is waived by the failure to object at trial." *Nelson v. State*, No. 05-09-01529-CR, 2011 WL 5027492, at *4 (Tex. App.—Dallas Oct. 24, 2011, no pet.) (mem. op., not designated for publication)[7] (citing *In re A.B.*, 133 S.W.3d 869, 876 (Tex. App.—Dallas 2004, no pet.)) *see Havard v. State*, 800 S.W.2d 195, 211 (Tex. Crim. App. 1989); *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex. Crim. App. 1983). Since the reporter's record demonstrates that Brown failed to preserve his second point of error, we overrule it.

Brown also complains that the trial court improperly informed the jury that the State was "examining a witness about a prior inconsistent statement." At trial, Brown's mother testified that

---

[5]"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702.

[6]Although we are not deciding the merits of Brown's second point of error and note that there are no published Dallas cases that address this point, we point out that we have previously rejected a similar argument. *Kihega v. State*, 392 S.W.3d 828, 834 (Tex. App.—Texarkana 2013, no pet.).

[7]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

5

Eddy remained silent when she spoke with him about the offense. The State attempted to impeach her, as demonstrated by the following dialogue:

> Q. [By the State]: Okay. Well, do you remember talking to Detective [Stephen] Lee back on September 26, 2014?
>
> A. Yes.
>
> Q. Okay. And do you remember telling Detective Lee that you didn't know who to believe because [Eddy] had told her -- told you that the defendant, your son, put his penis into his mouth?
>
> A. No.
>
> Q. You didn't say that?
>
> A. No.
>
> Q. You didn't say that you had a conversation with [Eddy] that same night that he told his mama what happened?
>
> [By the Defense]: Your Honor, objection.
>
> THE WITNESS: No.
>
> THE COURT: Hang on. Everybody stop, please. You have an objection?
>
> [By the Defense]: The question has been asked five or six times already.
>
> THE COURT: That objection is overruled. That objection is overruled as well. She's examining a witness about a prior inconsistent statement.[8]

---

[8]After this ruling, the State did not establish any prior inconsistent statement while cross-examining Brown's mother. Instead, it recalled Lee, who testified that he spoke with Brown's mother twice, who told him on both occasions that the child had told her about the sexual assault.

Because the record demonstrates that Brown failed to object to the trial court's comment as a comment on the weight of the evidence, he failed to preserve this issue for our review. Accordingly, we overrule both of these points of error.

*(3)* *Brown Preserved No Error Regarding the Trial Court's Handling of Brown's Right of Allocution*

A defendant's statutory right of allocation is provided by Article 42.07 of the Texas Code of Criminal Procedure, which reads, "Before pronouncing sentence, the defendant shall be asked whether he has anything to say why the sentence should not be pronounced against him." TEX. CODE CRIM. PROC. ANN. art. 42.07 (West 2006). Article 42.07 limits the right of allocation to circumstances where a defendant has been pardoned, is incompetent to stand trial, or when a defendant escapes and another person is brought to sentencing who is not the defendant. *See id.* Common law likewise affords a defendant the right to allocution, without the limitations imposed by the statutory right of allocation. *See McClintick v. State*, 508 S.W.2d 616, 618 (Tex. Crim. App. 1974); *Brown v. State*, No. 05-07-00816-CR, 2008 WL 1810315, at *4 (Tex. App.—Dallas Apr. 23, 2008, no pet.) (mem op., not designated for publication).[9]

Brown's sentence was assessed by the trial court. He testified during punishment, professed his innocence, and asked the trial court for mercy. Following the State's cross-examination, Brown's counsel invited Brown to "say whatever you have to say to the Judge." After pronouncing Brown's sentence, the trial court asked, "Is there any lawful reason why your

---

[9]At common law, a trial court was required to ask a defendant if he had anything to say before sentencing. *See Eisen v. State*, 40 S.W.3d 628, 634 (Tex. App.—Waco 2001, pet. ref'd). It is unclear whether the common-law right of allocation survives in Texas. *See id.*; *Pena v. State*, No. 13-14-00120-CR, 2014 WL 4161562, at *3 (Tex. App.—Corpus Christi Aug. 21, 2014, no pet.) (mem. op., not designated for publication).

client should not now be formally sentenced?" Brown's counsel responded, "[N]o, sir." On appeal, Brown argues that the trial court provided him with his statutory right of allocution, but violated his common law right of allocution.

The denial of the right of allocution must be preserved. *See Graham v. State*, 498 S.W.2d 197, 198 (Tex. Crim. App. 1973); *Norton v. State*, 434 S.W.3d 767, 771 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Jarvis v. State*, 353 S.W.3d 253, 254 (Tex. App.—Fort Worth 2011, pet. ref'd); *Brown*, 2008 WL 1810315, at *4. The record demonstrates that Brown's complaint was not preserved. Accordingly, we overrule Brown's fourth point of error.

*(4)     Ineffectiveness of Brown's Trial Counsel Was Not Established*

Brown also argues that his trial counsel rendered ineffective assistance because (A) he failed to object to the State's improper definition of reasonable doubt; (B) he affirmatively stated that he had no objection to the guilt/innocence jury charge, which contained an instruction that "it is not required that the prosecution prove guilt beyond all possible doubt"; (C) he failed to ask the trial court to include an instruction that "no conviction could properly be returned if the State's proof provided the jurors with only a strong belief or conviction regarding Appellant's guilt of the offense charged, which constitutes the definition of the clear-and-convincing standard of proof"; (D) he lodged only a hearsay objection to the testimony of Eddy's mother, Heather, who was the outcry witness; (E) he failed to object when Eddy's sixteen-year-old half-brother, Eli, repeated the outcry made to Heather; (F) he failed to request a limiting instruction that Lee's testimony regarding Brown's mother's conversation during his telephone call with her "was admissible only for the purpose of determining whether [a prior inconsistent statement] was made, not for the

8

content of the statement"; (G) he failed to object to the trial court's comments on the weight of the evidence; and (H) he lacked a command of the facts, as shown by his questioning of defense witnesses who were supposed to establish that Brown could not have been left alone with the child from May 30, 2014, through July 3, 2014, but later admitted they were not living with Brown after April 2014. He further argues that he was harmed by counsel's deficient performance because the evidence against him was conflicting.

As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Claims of ineffective assistance of counsel are governed by the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984). "To prevail, [the] appellant must show counsel's representation fell below an objective standard of reasonableness as well as a reasonable probability that a different outcome would have resulted but for counsel's error." *Batiste v. State*, 73 S.W.3d 402, 409 (Tex. App.—Dallas 2002, no pet.) (citing *Strickland*, 466 U.S. at 687–88).

To show deficient performance under *Strickland*, a defendant "must show that counsel's performance fell below an objective standard of reasonableness." *Id*. The review of defense counsel's representation is highly deferential, and "[w]e strongly presume counsel's competence." *Id*. (citing *Tapia v. State*, 933 S.W.2d 631, 634 (Tex. App.—Dallas 1996, pet. ref'd)). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). "When a record does not affirmatively reflect ineffective assistance, we cannot say counsel's performance was defective." *Batiste*, 73 S.W.3d at 409; *see Andrews v. State*,

159 S.W.3d 98, 102 (Tex. Crim. App. 2005) (indicating that claims of ineffective assistance of counsel are normally best left for habeas corpus proceedings); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ("Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional."). As to each claimed basis on which trial counsel was alleged to have been ineffective, a reasonable basis to explain counsel's action or inaction can be found.

In his first ground alleging ineffective assistance, Brown questions his counsel's failure to object to the State's allegedly improper definition of reasonable doubt. The State's definition came from instructions that were previously mandated by the Texas Court of Criminal Appeals in *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), *overruled by Paulson v. State*, 28 S.W.2d 570 (Tex. Crim. App. 2000).[10] In *Paulson*, relied on heavily by Brown, the Texas Court of

---

[10]*Geesa* formerly required the following six paragraphs:

> [1]      All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all the evidence in the case.

> [2]      The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.

> [3]      It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

> [4]      A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

Criminal Appeals discussed the then-mandated six paragraph instruction required by *Geesa* and overruled *Geesa* by holding that the better practice for trial courts was to refrain from providing a definition of reasonable doubt. *Paulson v. State*, 28 S.W.3d 570, 572 (Tex. Crim. App. 2000). The court found that trial courts were not required to instruct juries that "[a] reasonable doubt is a doubt based on reason and common sense after a careful and impartial consideration of evidence in the case," since the definition was so circular as to be "useless." *Id.*

However, counsel could have decided not to object to the State's definition of reasonable doubt because it was a correct statement of the law, nothing in *Paulson* "suggest[ed] that giving a correct statement of the law that happened to be contained within the *Geesa* instruction would necessarily be error," and *Paulson* did not hold that it was impermissible for the parties to discuss the concept of proof beyond a reasonable doubt with prospective jurors during voir dire. *O'Canas v. State*, 140 S.W.3d 695, 701 (Tex. App.—Dallas 2003, pet. ref'd) (quoting *Fluellen v. State*, 104 S.W.3d 152, 164 (Tex. App.—Texarkana 2003, no pet.)); *see Fuller v. State*, 363 S.W.3d 583, 587 (Tex. Crim. App. 2012).

Next, the record does not show why counsel decided not to object to the jury charge on guilt/innocence, which contained an instruction that "it is not required that the prosecution prove

---

[5]    Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

[6]    In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you and these instructions, you will acquit him and say by your verdict "Not guilty."

*Geesa*, 820 S.W.2d at 162.

11

guilt beyond all possible doubt; it is only required that the prosecution's proof exclude all reasonable doubt concerning the defendant's guilt." This instruction was similar to the third paragraph of the *Geesa* instruction. Counsel could have decided to forego an objection on this point since both the Texas Court of Criminal Appeals and the Dallas Court of Appeals have specifically rejected the argument that submitting such an instruction constitutes error. *Woods v. State*, 152 S.W.3d 105, 114–15 (Tex. Crim. App. 2004); *O'Canas*, 140 S.W.3d at 701; *see Glynn v. State*, No. 05-13-00333-CR, 2014 WL 1168927, at *2 (Tex. App.—Dallas Mar. 21, 2014, pet. ref'd) (mem. op., not designated for publication) ("This Court has held that *Paulson* did not prohibit trial courts from giving any of the six paragraphs constituting the *Geesa* instruction.").

In his third ground alleging ineffective assistance, Brown essentially argues that his counsel should have asked the trial court to instruct the jury that "no conviction could properly be returned if the State's proof provided the jurors with . . . clear-and-convincing" evidence. Counsel could have decided that a request for such an instruction was unnecessary since (1) the trial court instructed the jury that the burden of proof was beyond a reasonable doubt, (2) nothing requires a trial court to instruct the jury on the clear and convincing standard in a criminal case, and (3) *Paulson* cautioned against defining reasonable doubt in the jury charge. Counsel could have also determined that such an instruction was not required because the State discussed the clear and convincing evidence standard during voir dire and explained that its burden was higher than that standard.

In his fourth ground alleging ineffective assistance, Brown criticized counsel for only asserting a hearsay objection to Heather's testimony of the outcry instead of raising an objection

12

under the outcry statute, which is a "hearsay exception statutorily limited to live testimony of the outcry witness." *Bays v. State*, 396 S.W.3d 580, 581 (Tex. Crim. App. 2013); *see* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2016). First, we see nothing wrong with counsel's objection since the State was required to demonstrate that Heather was a proper outcry witness in order to avoid the exclusion of her testimony. Even if we agreed with Brown's criticism of counsel's objection, counsel could have determined that a more specific objection—that Heather's testimony was not admissible as outcry testimony—was unnecessary during the time that the trial court was holding a hearing under Article 38.072 outside the presence of the jury. In other words, counsel could have determined—and the record demonstrated—that the trial court understood that Brown was challenging the admissibility of Heather's testimony under Article 38.072.

In his fifth ground alleging ineffective assistance, Brown questions counsel's failure to object when Eli repeated the outcry made to Heather. The State designated both Heather and Eli as outcry witnesses. After the outcry hearing, and in front of the jury, Heather testified that Eli was a passenger in the car she was driving when Eddy made his outcry. She then informed the jury of the substance of Eddy's simultaneous outcry to her and Eli. When the State asked Eli "What happened on July 3rd, 2014," Eli engaged in a narrative which described that he was travelling with Heather and Eddy to their grandmother's house, that a song Eddy liked came on the radio, that Eddy said he was sad, and that he asked Eddy why he was sad. After this, and though the State's question did not necessarily indicate that Eli would divulge the substance of the outcry during his answer, Eli recounted Eddy's outcry during the narrative.

13

It is entirely possible that counsel decided not to object to Eli's testimony because he wanted to avoid any appearance that Brown was attempting to hide something. Counsel could have also determined that his objection would not benefit Brown in front of the jury in light of Heather's testimony that she and Eli heard the same outcry. Counsel could have also decided that, even if his objection was sustained, it would have little or no effect given the knowledge that Eddy would testify to the same facts. Last, counsel also could have been aware that, had the trial court overruled his objection, any error would have been harmless. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (holding that improper admission of evidence is not reversible error if same or similar evidence is admitted without objection at another point in trial); *Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that error in admitting outcry witness' testimony was harmless where complainant's mother and brother provided "substantially the same account of the offense" as outcry witness). On the record before us, we cannot determine that counsel rendered ineffective assistance in failing to object to Eli's testimony of Eddy's outcry.

In his sixth ground alleging ineffective assistance, Brown argues that counsel should have requested a limiting instruction that Lee's testimony on recall was admissible only for the purpose of determining whether Brown's mother made a prior inconsistent statement. Brown's mother had told the jury that Eddy never divulged an act of abuse to her. In order to impeach her, the State recalled Lee, who testified,

> I discussed with [Brown's mother] about when she first heard about the outcry and she told me about that. When the victim's mother called her and she had first heard about the outcry from the victim over the telephone.

14

And she also informed me that she had seen the victim several times after that first initial outcry to her over the telephone, and that she had asked him again what had happened in person, her and the victim together, and that she said the victim said the same thing.

Lee did not testify immediately after Brown's mother. Instead, the jury heard testimony from Eddy's father before Lee. Brown's counsel could have decided to forego seeking a limiting instruction because he felt that the instruction would remind the jury of Brown's mother's testimony and highlight the impeachment value of Lee's testimony. Alternatively, counsel could have decided that no limiting instruction was required because it was clear that Lee's rebuttal testimony was being offered for impeachment purposes only. *See Cantrell v. State*, 731 S.W.2d 84, 95 (Tex. Crim. App. 1987); *Flowers v. State*, 124 S.W.3d 801, 804 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Adams v. State*, 862 S.W.2d 139, 148 (Tex. App.—San Antonio 1993, pet. ref'd). Absent a record explaining counsel's reasoning, we cannot find counsel ineffective on this ground.

Brown also argues that counsel was ineffective for failing to object to the trial court's statements (1) that Edmundson was an "expert" and (2) that the State was examining Brown about a prior inconsistent statement. We disagree.

Counsel could have decided not to object to the trial court's reference that Edmundson was an expert because he believed that the trial court was explaining its ruling on admissibility of Edmundson's testimony instead of commenting on the weight of the evidence. In fact, we have previously rejected the argument that a trial court's reference to a witness as an expert constitutes

a comment on the weight of the evidence. *Kihega*, 392 S.W.3d at 834.[11] Counsel might have also reasoned that an objection could have led the State, who had designated Edmundson as an expert witness, to further establish his credentials and expertise in order to admit his expert testimony.

There are also reasons why counsel could have decided not to object to the trial court's statement that the State was examining Brown "about a prior inconsistent statement." A trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates any disbelief in the defense's position, or diminishes the credibility of the defense's approach to its case. *Id.* (citing *Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.)). Counsel could have believed that the trial court was merely explaining the reason for allowing the State to elicit cumulative testimony and that its statement to the jury was not a comment on the weight of the evidence because it expressed no approval of the State's argument, did not indicate whether it believed there was impeachment evidence, and did not otherwise diminish the defense's approach to the case. In the absence of a record explaining counsel's reasoning, we cannot find him ineffective in failing to object to the trial court's comment.

Finally, Brown concludes, from his counsel's behavior, that counsel lacked a command of the facts at trial. Counsel questioned defense witnesses in an attempt to establish that Brown lacked the opportunity to commit the offense. Specifically, he attempted to demonstrate that Brown was not alone with the child from May 30, 2014, through July 3, 2014, when the offense allegedly occurred. Brown argues that, because witnesses admitted during cross-examination that they had moved out of Brown's apartment in April, those witnesses could not establish whether

---

[11]We have not been able to locate any Dallas cases on point.

Brown was ever left alone with the child during the relevant time period. Brown contends this was ineffective assistance because counsel did not have a command of the facts.

In order to sustain this ground of ineffective assistance, we would be required to speculate about the conversations counsel had with these witnesses, which we cannot do. It is entirely possible that these witnesses told counsel that they could confirm that Brown was never left alone with the child. The witnesses may have even claimed that they had, in fact, lived with Brown during the relevant time period. In the absence of evidence of counsel's reasoning, we will not assume that he lacked a command of the facts.

We conclude that Brown's claims of counsel's ineffectiveness were not firmly founded in the record. Thus, the record is insufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making that it overcame the presumption that counsel's conduct was reasonable and professional. Accordingly, we find that Brown cannot meet the first prong of the *Strickland* test. We overrule this point of error.

We affirm the trial court's judgment.


                                        Josh R. Morriss, III
                                        Chief Justice


Date Submitted:        August 29, 2016
Date Decided:          October 14, 2016

Do Not Publish

17